**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Alphonse Vincent CASTALDI, Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James Lloyd McBRIDE, Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Roy Russell COOK, Defendant-Appellant.
Nos. 18441–18443.**

United States Court of Appeals,
Seventh Circuit.

Nov. 8, 1971.

Certiorari Denied March 20, 1972.
See 92 S.Ct. 1263, 1273.

**508**

Richard L. Daly, Norman S. London, James M. Martin, Murry L. Randall, St. Louis, Mo., for defendants-appellants.

Henry A. Schwarz, U. S. Atty., E. St. Louis, Ill., Michael L. Levinson, Asst. U. S. Atty., Danville, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, and KILEY and FAIRCHILD, Circuit Judges.

KILEY, Circuit Judge.

Appellants Castaldi, McBride and Cook appealed separately from their convictions by a jury of conspiracy to enter a federally insured savings and loan association building with intent to commit a felony, 18 U.S.C. § 371, and substantive offenses of burglary of the building, 18 U.S.C. § 2113(a). We affirm the convictions.

In the early morning of June 11, 1969, Carbondale, Illinois police were notified of a burglary being committed at the Carbondale Savings and Loan Association (S–L). As the police approached the building about 3:00 a. m., they heard someone shout "Cops," and observed two men running from the building, one of whom was wearing an unusually bright blue shirt. The men eluded the police, one running straight ahead and the other turning a corner of the building in the direction of nearby shrubbery. The policemen proceeded to the building and found it had been broken into. They found a ladder against the building at an open window, and entered and found a two foot hole had been pounded through a concrete wall leading to the vault. They also found appellant Castaldi hiding in the building. Police arrested and searched him and found a Missouri driver's license. Immediately after Castaldi was arrested, police searched the outside area and noticed, about a block away, a 1965 Cadillac bearing a Missouri license. It was the only car on the street, was parked three feet from the curb, was unlocked, its radiator was warm, a key was in the ignition, and fresh handprints were in the dust on the trunk. The police called and ordered the Cadillac towed to, and impounded at, a nearby service station.

Appellant McBride was soon found and arrested. He was hiding in shrubbery two doors from the S–L building. And while driving McBride to the Murphysboro jail seven miles away at 5:00 a. m., one of the officers, who had observed the men running from the building earlier, saw a man wearing a very bright blue shirt with a build identical to the blue-shirted man seen earlier. The man fled. Other officers were alerted and soon arrested the man, who turned out to be appellant Cook.

At about 5:25 a. m. an Illinois state investigative agent, accompanied by two policemen, went to the service station where the Cadillac was impounded. The investigator searched outside and inside for fingerprints. Thereafter, the policemen searched inside the car and found a switch in the glove compartment which opened the trunk. Neither the investigator nor the police had a search warrant. In the trunk the police found torches, acetylene gas, wire cutters, a ladies' nylon stocking, two-way radios and a ski mask.

I.

We see no merit in the contention that the district court erred in failing to grant appellants' motion for acquittal on the ground that the govern-

ment failed to prove unlawful intent.[1] The jury could very well infer that the building was entered with intent to commit a felony from the following facts: a ladder was found positioned against the S–L building, a window had been jimmied and the front door damaged, a hole had been pounded in the concrete wall around the vault, Castaldi was found hiding in the building, and the Cadillac was discovered suspiciously parked and disposed nearby.

■ The court's ruling that prima facie unlawful intent had been shown was not erroneous. This proof shows much more than suspicion and therefore distinguishes Hiet v. United States, 124 U.S.App.D.C. 313, 365 F.2d 504 (1966). And the government was not required to show that there was money in the vault in order to prove defendants entered the building with intent to steal. Pinkney v. United States, 380 F.2d 882 (5th Cir. 1967).

## II.

A pre-trial motion was made by McBride and Cook to suppress the incriminating material seized in the 5:25 a. m. search on the ground that the search was unlawful in violation of their Fourth Amendment rights.[2] After a hearing and briefing the court denied the motion. The evidence was admitted at the trial.

The question is whether the 5:25 a. m. search of the Cadillac was illegal as violative of the Fourth Amendment, and admission of the fruits of the search unconstitional error.

■ We think the police at 3:00 a. m. had probable cause under the circumstances to seize and impound the Cadillac. They had been notified of the bur-

glary in progress, observed the men running from the building, found the building had been forceably entered, found inside a two foot hole pounded through a concrete wall leading to the S–L vault, and found Castaldi hiding in the building, wearing a black sweat shirt and pants, workmen's boots and black gloves, and in his possession a Missouri driver's license. About a block away from the building, police found the unlocked Cadillac bearing a Missouri license—the only car on the Carbondale street, and situated in suspicious circumstances. We think also that the police judgment that the Cadillac was related to what they had discovered in the building was justified. Their order to have the Cadillac towed to the service station and impounded was in our view prudent police conduct, especially with Castaldi's two confederates, previously seen running from the building, at large. See Chambers v. Maroney, 399 U.S. 42, 52 n. 10, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

The general rule is that all warrantless searches, even if based on probable cause, are "per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). Here we think the government has met its burden of showing that the search in question falls within one of these exceptions. See United States v. Jeffers, 342 U.S. 48, 51, 72 S.Ct. 93, 96 L.Ed. 59 (1951).

Under the circumstances which faced the police at 3:00 a. m., a search of the Cadillac at that time would have been reasonable as an extension of the rule in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), and accordingly under Chambers v. Maroney,

1. No contention is made that the evidence is insufficient to support the guilty verdicts, if the evidence subject of discussion in Part II of this opinion was properly ruled admissible.

2. At the trial, Castaldi objected to the introduction of the material and adopted

the McBride-Cook motion to suppress. McBride and Cook joined in his objection. We shall consider the relevant evidence adduced at both the pre-trial hearing and at trial in determining the validity of the search.

*supra,* the delayed search at 5:25 a. m. was justified.

The Supreme Court in Coolidge v. New Hampshire, 403 U.S. 443, at 459, 91 S. Ct. 2022, at 2034, 29 L.Ed.2d 564 (1970), stated:

> The underlying rationale of *Carroll* and of all the cases which have followed it is that there is
>
> "a necessary difference between a search of a store, dwelling house, or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon, or automobile, for contraband goods, *where it is not practicable to secure a warrant* because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." 267 U. S., at 153 [45 S.Ct. at 285] (Emphasis supplied.)

As we said in *Chambers, supra,* [399 U. S.] at 51 [90 S.Ct. at 1981], "exigent circumstances" justify the warrantless search of "an automobile *stopped on the highway,*" where there is probable cause, because the car is "movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained." "[T]he opportunity to search is fleeting. . . ." (Emphasis supplied.)

In the case before us, we find that the circumstances at 3:00 a. m. presented to the police what they could reasonably have thought was a fleeting opportunity. They had solid grounds for seeing a likely connection between the Cadillac and the frustrated burglary of the S–L building, and the two Castaldi confederates were still at large. We think application of the *Carroll* case to the facts here would not extend it beyond its original rationale as the Court in *Coolidge* thought applying *Carroll* there would do.

Coolidge v. New Hampshire, *supra,* at 458, 91 S.Ct. 2022.

It is true that the Cadillac in the case before us was neither being driven nor occupied at the time. Nevertheless, Castaldi's confederates, seen running from the bank building, were still at large and the police could well have decided that there was danger to themselves if there were dangerous weapons inside the car, or danger to evidence if somehow the car could be driven away by one of the confederates still at large. *See* Coolidge v. New Hampshire, 403 U.S. 443, 460, 462, 91 S.Ct. 2022, 29 L.Ed.2d 564. These considerations, it seems to us, bring this case within emanations from *Carroll* which justified the warrantless search of the automobile there.[3]

■ That the car in *Carroll* was transporting contraband is not a significant fact militating against our decision. We have found that the police here could justifiably relate the Cadillac—parked in a public highway in suspicious circumstances—to the frustrated burglary and infer the likelihood that the Cadillac contained dangerous weapons or stolen property. It is not what the search discovers, but what the police had probable cause for believing was in the car, that justifies a warrantless search. Furthermore, as in *Carroll,* we think it was not practicable[4] for the police to obtain a warrant at 3:00 a. m. They did what appeared to them the next best thing at the time—had the car towed away and immobilized against the danger of its being driven away while the police continued looking for the men at large.

The search was made at 5:25 a. m. when the three suspects were in custody. Under *Chambers,* since the police had the right to make a warrantless search at 3:00 a. m., they had the right to make the deferred search at 5:25 a. m. It

---

3. This conclusion obviates the necessity of discussing whether the warrantless search was justified as an incident of Castaldi's arrest.

4. In *Carroll,* obtaining a warrant is impracticable where the suspect "vehicle can be quickly moved out of the locality of jurisdiction in which the warrant must be sought." 267 U.S. p. 153, 45 S.Ct. p. 285.

may be said that in the interest of preserving so far as possible the value of privacy protected by the Fourth Amendment, the deferred search could be deferred further until a magistrate, rather than the police, could make the determination of probable cause. See the recent Supreme Court decision in Coolidge v. New Hampshire, 403 U.S. 443, 458, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Yet the Supreme Court in Chambers v. Maroney justified the warrantless search at the police station many hours after the *Chambers* automobile was stopped on the highway.

The decision in *Coolidge* striking down the search there is distinguishable. There Coolidge was arrested, under a warrant, in his home in the daytime, and the police, with an invalid warrant, at night searched and impounded his Pontiac automobile parked in the driveway on his property, not being used for an illegal purpose. Coolidge v. New Hampshire, *supra*, at 462 n. 19, 91 S.Ct. 2022. Incriminating evidence was found in the car and introduced at his trial, at which he was convicted of murder. The police had known for some time before Coolidge's arrest that the Pontiac car was probably used in the crime which he was suspected of committing. There was ample time to apply for a valid search warrant. When the police seized the *Coolidge* car it was not being used for any illegal purpose and, since parked in the driveway on his property, could not have presented the police with an opportunity that was "fleeting," as the Court found in *Chambers*. In *Coolidge* no confederates were at large, as here, Coolidge was under arrest, and his wife taken away by police. For that reason the Court found that *Carroll* did not justify the *Coolidge* search.

■ We find that the public interest, in affording the maximum protection for the valuable interest in the Fourth Amendment privacy right, does not require striking down the 5:25 a. m. search in this case. We hold that the 5:25 a. m. search was reasonable and that the district court did not err in denying the motion to suppress the fruits of the search and in admitting the evidence at the trial.

### III.

■ There was no error in rejecting McBride's "position instruction," which stated, in part, "It is the position of . . . McBride that he did not in any way participate in the alleged burglary . . . and that the fact that he was close to the area in which the alleged burglary occurred was in no way connected with the alleged burglary. . . . ." The court could reasonably have thought the instruction would be confusing, and we cannot say the court incorrectly decided against giving it.

### IV.

■ Finally, we find no reversible error in the court's denial of a motion for mistrial because of an FBI agent's unresponsive answer to a prosecutor's question. The question asked was, "About how long did [Cook's] interrogation last?" The answer was, "Not very long, because I read him his rights, and he refused to make a statement." The answer violated Cook's constitutional right to remain silent. Miranda v. Arizona, 384 U.S. 436, 468, 86 S.Ct. 1602, 16 L.Ed.2d 694; United States v. Matos, 444 F.2d 1071 (7th Cir. 1971). However, there is no claim or showing that the unresponsive answer was a ploy. The court struck, and the jury was immediately cautioned to disregard, the answer. On the record before us we can declare our belief that the error was harmless beyond reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). We do remark, however, that care should be used in preparation of government cases that witnesses be admonished of the risk of vitiating a conviction through unresponsive answers, and point out, as we did in *Matos,* the risk in testimony of *Miranda* warnings where no statement or confession is intended to be offered. In *Matos* this court reversed

Matos' conviction because we found prejudicial error in a similar unresponsive answer of a government witness. However, there the court overruled Matos' objections, denied the motion and refused to caution the jury.

The judgments are affirmed.