**Lendsay MERRILL, Defendant-Appellant,**

v.

**UNITED STATES of America,
Plaintiff-Appellee.**

No. 71–1394.

United States Court of Appeals,
Seventh Circuit.

Argued April 18, 1972.

Decided June 23, 1972.

Robert L. Thompson, Jr., James R. Solomon, Fort Wayne, Ind., for defendant-appellant.

William C. Lee, U. S. Atty., John R. Wilks, Asst. U. S. Atty., Fort Wayne, Ind., for plaintiff-appellee.

Before DUFFY, Senior Circuit Judge, MURRAH *, Senior Circuit Judge and JUERGENS **, District Judge.

---

\* Senior Circuit Judge Alfred P. Murrah of the Tenth Circuit is sitting by designation.

\*\* Chief District William G. Juergens of the Eastern District of Illinois is sitting by designation.

DUFFY, Senior Circuit Judge.

A Federal Grand Jury returned a two-count indictment against the defendant and two co-defendants, charging them with passing and possession of counterfeit currency in violation of 18 U.S.C. § 472.

Count I of the indictment charged that on April 16, 1970, the three named defendants passed a counterfeit ten dollar Federal Reserve Note at the Indiana Turnpike Service Area Number Seven in LaGrange, Indiana.

Count II charged that on the same date, the three defendants had in their possession approximately $10,000 in counterfeited Federal Reserve Notes, also in violation of Title 18 U.S.C. § 472.

Defendants entered pleas of not guilty and moved for separate trials. This motion was granted.

The three defendants jointly filed a motion to suppress evidence alleged to have been improperly seized without a search warrant, and to suppress all written and oral statements made by each of the defendants. After a hearing on the motion to suppress, the trial court ruled that all evidence sought to be suppressed had lawfully been seized and that all statements made by the defendants could properly be admitted. The motion was thereby denied.

Defendant Merrill was sentenced to prison for one year on Count I and for one year on Count II, the sentences to run concurrently. Defendant was permitted to remain at liberty on bond pending appeal.

This appeal is based on the Court's ruling denying the motion to suppress. Defendant-appellant Merrill is the only one of the defendants who is now before this Court; the other two defendants were sentenced but failed to appeal.

Richard Coyle, a Trooper with the Indiana State Police, was on patrol on the Indiana Turnpike on April 16, 1970. He received a radio dispatch regarding the passing of a counterfeit bill at Service Area Number Seven on the Turnpike. The dispatch described the motor vehicle involved as a dark colored Imperial, and that four Negroes were passengers in that car. The dispatch also gave the license number of the automobile.

Trooper Coyle drove east on the Indiana Turnpike after the radio communication, arriving at the East Point Toll Plaza, the last Indiana toll plaza before the Ohio State Line. Coyle noticed a car of the description indicated by the radio communique parked on the side of the toll road outside the toll plaza. The license number of the vehicle corresponded with the number radioed to him, and the vehicle was occupied by four Negro men.

Coyle then parked his vehicle and advised the radio dispatcher of his location. The Trooper then left his car and proceeded to question the occupants of the parked vehicle. Merrill, the sole appellant in this action was a passenger in the car. Upon questioning the occupants, Trooper Coyle was informed the car was registered to Merrill with a registration from the year 1969 for a license number which did not correspond to the plate number displayed on the vehicle.

Merrill was told that someone in a black Imperial car with the same license number as the one in which Merrill was riding had passed a counterfeit bill at the Service Area Number Seven. Merrill was advised by Trooper Coyle that he was merely investigating the possible passing of a counterfeit bill.

Defendant Merrill told Trooper Coyle that he had stopped at the Service Area in question and had made a purchase which was paid for with a $10 bill.

Trooper Stout then arrived at the scene. No search had been made prior to his arrival. When defendant Merrill was asked for identification, he produced an officer's badge and credentials indicating he was, in fact, a special police officer in Chicago, Illinois.

Prior to Stout's arrival at the toll plaza, he received a radio message from his superior telling him [Stout] that he had examined the ten dollar bill in question,

and was of the opinion that the bill was counterfeit.

Trooper Stout, after ascertaining the facts of the situation at the toll plaza, asked defendant Merrill for consent to observe the cash on his person, and furthermore to make a search of his person and automobile. Merrill indicated that he was aware of the officer's right to search, remarking to his three companions—"No, that is all right. They can do this." All four individuals were cooperative and acquiesced to searches of their persons. No objection to the search was made at any time by defendant Merrill.

Defendant Merrill opened the hood and the trunk of the automobile. A sun glass case containing $190.00 in counterfeit currency was found behind the rear seat of the vehicle. Trooper Stout advised all four defendants they were under arrest for possession of counterfeit money. They were given *Miranda* warnings and were advised of their Constitutional rights.

A suitcase found in the trunk of the car was locked but was not opened at the scene of the arrest. Stout obtained a search warrant after the arrests and opened the suitcase. Counterfeit bills totaling some $9,500.00 were found in the suitcase. The validity of this search warrant was not challenged at the motion to suppress hearing, and is not an issue upon appeal.

The trial judge at the hearing of the motion to suppress made the following findings in reaching his decision to deny said motion:

"The Officer identified that there were four adult colored males in a dark Chrysler Imperial. He identified the license number. He had probable cause under the decisions of the Supreme Court as they relate to automobiles, to make his search, and it was a search within the scope of his authority, and within the scope of the cause, the probable cause which was afforded to him. . . .

I make no finding concerning the consent to search the vehicle, although I would do so if I had to at a later date, but since I have found there was probable cause for the search I need not decide the issue of whether consent was given. . . ."

The question which is before us on appeal is whether the search of the defendant's vehicle at the toll plaza was illegal as violative of the defendant's Fourth Amendment rights and admission of the fruits of said search amounted to unconstitutional error.

■■ The decisions of the Supreme Court with respect to Fourth Amendment probable cause requirements before a search or arrest warrant can issue require that a judicial officer be supplied with sufficient information to support an independent judgment that probable cause exists for a warrant. Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L. Ed.2d 637 (1969); United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Furthermore, it is settled law that a reviewing court, in assessing a police officer's criteria for probable cause in effecting a warrantless search or arrest, should employ no less stringent a standard than would a magistrate as a prelude to issuing a warrant. United States v. Ventresca, *supra*; Aguilar v. Texas, *supra*; Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). See McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967).

■ Thus the factual information radioed to the officers and any additional information visible to them upon their detention of the defendant herein, must be sufficient, in itself, to support a finding of probable cause for the search just as though a warrant were being applied for before a magistrate. Additionally, the officers can use any additional information received during the detention

of the suspect which is corroborative of an informer's tip as in this case, the radio communique from the officer at the scene of the passing of the bill. See Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).[1]

We are of the opinion as is the trial court, that the officers herein had probable cause to conduct the search notwithstanding the fact that defendant Merrill already had consented to said search prior to the alleged unlawful search. The Imperial automobile was of the exact description as one noted minutes earlier in the radio communique. Inside the automobile were four Negro male occupants as indicated by the dispatch. The counterfeit bill had been passed only minutes earlier on the same highway, and the counterfeit nature of the bill was substantiated by an officer at the scene of the passing who immediately communicated his belief to a trooper arriving at the scene of the detention.

In a recent Supreme Court decision, Whiteley v. Warden, *supra*, Mr. Justice Harlan delivered the opinion for a divided Court holding that where a warrant applied for by a local sheriff clearly could not support a finding of probable cause, an arresting officer, at a different time and location, absent additional corroborative factual data tending to substantiate an informer's tip, could not effect a valid search and arrest.

We are of the opinion that there existed herein a substantial connection in occurrence, time and location for the officers who performed the search to assess, from the attendant circumstances, that a warrantless search was justified and that they had probable cause to conduct said search. The additional data received from the officer at the scene of the crime, coupled with the original communique, in our opinion, was more than an adequate basis for probable cause. Therefore, the District Court was well within its discretion in denying the motion to suppress.

With respect to warrantless searches, the Supreme Court in Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) held that even if the requisite probable cause were present, such searches are "per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." We feel that the government has met the burden of proof that the search herein falls within one of these exceptions.

In a recent Supreme Court decision, Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), the law of warrantless searches of automobiles was discussed. The Court stated at page 459, 91 S.Ct. at page 2034:

> "The underlying rationale of *Carroll* [Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543] and of all the cases that have followed it is that there is 'a necessary difference between a search of a store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained and a search of a ship, motor boat, wagon, or automobile for contraband goods, where it is not practicable to secure a warrant, because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.' 267 U.S., at 153, 45 S.Ct. at 285.

> As we said in Chambers, *supra*, at 51, 90 S.Ct. at 1981, 'exigent circumstances' justify the warrantless search of 'an automobile stopped on the highway,' where there is probable cause, because the car is 'movable, the occupants are alerted, and the car's contents may never be found again if a

---

1. Prior to Trooper Stout's arrival at the scene of the detention of the suspects he had received a radio dispatch from one Sergeant Carl Burksted to the effect that he

(Burksted) had personally examined the ten dollar bill in question and was of the opinion that the bill was counterfeit. (Transcript, pg. 143–19).

warrant must be obtained.' '[T]he opportunity to search is fleeting. . . .' "

In the case at bar, the situation presented to the Troopers on the Indiana Turnpike appears to exemplify the "fleeting opportunity" considered by the Supreme Court in Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). Furthermore, apparent to the troopers was the probability that the car could rapidly be moved out of their locality. See Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1947). In holding that the officers had probable cause to make the search of defendant Merrill's automobile, we are of the opinion that the mandates of the Supreme Court as applied to the instant fact situation are not extended in the least beyond their original rationale.

The car in the case before us was traveling on an interstate toll road. The car, at the time of apprehension and arrest, was situated less than ten miles from the Ohio State line bound in an easterly direction. The passing of the counterfeit bill to the station attendant had transpired only minutes before. With these facts before us, we again reiterate that the officers had probable cause following the radio dispatch and the "exigent circumstances" of the confrontation justified the warrantless search of the automobile. *Chambers, supra; Coolidge, supra.* See United States v. Castaldi, 453 F.2d 506 (7 Cir., 1971).

We hold the search of the automobile was reasonable and that the District Court was correct in denying the motion to suppress the fruits of the search and the written and oral statements made by the defendants. Probable cause was present and consent was not at issue as found by the District Court.

The order and judgment of conviction of the District Court is

Affirmed.