UNITED STATES of America,
Plaintiff,

v.

Brad Simon **BABICH** et al., Defendants.

Crim. No. R–14440.

United States District Court,
D. Nevada.

July 31, 1972.

**158**

## ORDER DENYING MOTION TO SUPPRESS

BRUCE R. THOMPSON, District Judge.

Defendants were indicted and convicted for conspiracy and smuggling of marihuana by aircraft from Mexico to Lander County, Nevada. The 664 pounds of marihuana were found in a 1960 four-wheel drive pickup truck with camper shell which had become mired in the bed of a dry lake approximately fifty miles from Austin, Nevada. The marihuana and other articles of evidence taken from the truck were received in evidence over defendants' objection that they were the product of an unlawful search. A pre-trial motion to suppress was made and hearing held at which the sufficiency of the affidavit supporting the search warrant was questioned. The defense also suggested that the evidence had, in fact, been seized prior to obtaining a warrant under circumstances where a warrant was required. The Government, while not conceding the invalidity of the warrant, countered also with contentions that the truck had been abandoned, that the marihuana was in "plain view" and subject to seizure without a warrant and that defendants had no standing to move to suppress. It appeared that the Court might, in effect, have to try the case twice to resolve the pre-trial motion to suppress inasmuch as a great deal of the trial evidence would be relevant to the parties' contentions. Accordingly, the pre-trial motion was denied with leave to renew the motion after the trial. Defendants were convicted, the motions to suppress were renewed and a post-trial hearing was held at which some additional evidence was received over defendants' objections and subject to their motions to strike.

The following facts relevant to the motion to suppress are proved by the evidence:

In the early morning of August 4, 1971, Dale Elliott, a fish and game agent, drove into Grass Valley and observed smoke arising at the north end of

Joseph L. Ward, U. S. Atty., and Lawrence J. Semenza, Asst. U. S. Atty., Reno, Nev., for plaintiff.

Harry E. Claiborne, Las Vegas, Nev., for defendant Brad Simon Babich.

Oscar B. Goodman, of Goodman & Snyder, Las Vegas, Nev., for defendant James M. Johnson.

Douglas G. Lohse, of Lohse & Lohse, Chartered, Reno, Nev., for defendant John T. Spann.

a dry lake bed. He drove to the site and found a burning Cessna 310 airplane. He took the number from the plane and radioed a message to the Sheriff's Office at Austin. Deputy Sheriff Larry S. Coy received the message and left Austin with Mr. Retter in the early afternoon to investigate the plane. They met Elliott at the crash site. They searched the badly burned plane. The baggage compartments were empty but in the left compartment, they found remnants of seeds and stems which appeared to be marihuana. They determined that the identification numbers on the sides of the plane had been altered by tape. They observed vehicle tracks leading northerly and also southerly from the crash site. Coy also received a report that someone had walked out of the dry lake area to the Baumann Ranch that morning and had made a telephone call to Reno reporting that his truck was stuck and he needed help. Deputy Coy returned to Austin and telephoned FBI Agent Meale in Elko who agreed to investigate the possibility of the interstate transportation of a stolen aircraft. On the morning of August 5, Deputy Coy telephoned his boss, Sheriff George E. Schwin, who was in Reno and reported what he had found. He also telephoned Mr. Fields, an FAA investigator, who agreed to join the investigation.

In the early afternoon of August 5, Deputy Coy, Deputy Watson, FBI Agent Meale and Mr. Fields left Austin together and drove to the crash site. They jointly investigated the crashed plane. The fire appeared to have been incendiary after the landing gear had been disabled on landing. Fields concluded that the aircraft had sufficient fuel capacity and carrying capacity to be used for transportation of large quantities of drugs a distance of one thousand miles. The officers followed tire tracks northerly from the crash site and, at a distance of two miles or more, came upon the white International truck mired in the mud. The doors to the front cab were unlocked. The back door of the camper shell had been broken open and was

hanging open. The officers observed a number of white sugar sacks piled inside which had Spanish words printed on them. Deputy Coy, who had had previous experience with marihuana cases, was of the opinion that the odor emanating from the truck was from marihuana. (The marihuana was in evidence at the trial and everyone in the courtroom knew what he was talking about.)

The officers discussed the situation and agreed to obtain a search warrant. Two rifles were removed from the front cab compartment of the truck and were taken by Watson. Deputy Watson and Investigator Fields returned to Austin. Agent Meale returned to Elko. Deputy Coy remained at the site and "staked-out" the plane and truck to protect them from depredations and to apprehend anyone arriving to remove the contents of the truck. In the early evening of August 5, Coy was joined by Deputy Adams from an adjoining County. Meanwhile, Deputy Watson in Austin telephoned the Lander County District Attorney and also Sheriff Schwin in Battle Mountain and told them what the investigation had discovered. The District Attorney prepared an affidavit for a search warrant and a warrant and Schwin appeared before Justice of the Peace Lemaire and the warrant was issued. Schwin arrived at the site of the "stake-out" about midnight and the officers took turns maintaining watch. In the early morning of August 6, Deputies Shepherd and Beebe arrived, the search warrant was executed. the International truck was unloaded, the truck was removed from the bog and the truck and contents and the remnants of the plane were taken to Austin.

The foregoing are the facts known to the officers at the time of the seizure and the search. In my opinion, they establish probable cause for the seizure of the truck and contents and for obtaining a search warrant.

In addition, defendant Fletcher testified for the Government at the trial. He is the one who mired the truck in the lake bed. He testified that before

leaving it, he had padlocked the back door of the camper shell and had thrown a sleeping bag over the sacks of marihuana. The hasp had been pried and broken by someone and the sleeping bag moved before the officers found the truck. Fletcher also stated that he saw the truck in Austin at the Courthouse on the afternoon of August 5. The Court believes he was mistaken in this observation.

In any event, Fletcher's testimony is the basis for defendants' inferences that the officers seized the truck and drove it to Austin on the afternoon of August 4 and then decided that they should have obtained a warrant and returned the truck to the dry lake. The Court does not accept these inferences and credits the testimony of the officers. No one knows who broke into the truck before the officers found it.

■ The evidence does not show that the truck was abandoned. Abandonment is a matter of intent. Fletcher's conduct in locking the camper shell and walking to the Baumann Ranch to telephone for assistance demonstrates an absence of intent to abandon.     .

■ The defendants also are correct in their contention that the plain view doctrine is inapplicable. The officers did come upon the truck inadvertently and they had justification for following the tracks to the truck in the open desert (Cf. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)), but contraband marihuana as such was not in plain view. All that was in plain view of the senses was evidence supporting probable cause. Such evidence would not justify an otherwise illegal search under the plain view exception. California v. Hurst, 325 F.2d 891 (9th Cir. 1963), reversed on other grounds, 381 U.S. 760, 85 S.Ct. 1796, 14 L.Ed.2d 713; People v. Marshall, 69 Cal.2d 51, 69 Cal.Rptr. 585, 442 P.2d 665 (1968); Coolidge v. New Hampshire, *supra*.

■ The next point to be considered is whether, inasmuch as the officers did in fact obtain a search warrant, the admissibility of the evidence must stand or fall on the validity of the warrant. The Supreme Court has never so held. To the contrary, the case of Coolidge v. New Hampshire, *supra*, dealt with a search pursuant to an invalid warrant. After finding the warrant invalid, the Court, nevertheless, considered and disposed of three other theories advanced to support the reasonableness of the search, (1) that the search was incident to a valid arrest; (2) that the search was a justifiable warrantless search of an automobile under Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L. Ed. 543; (3) that the seizure was of an instrumentality of the crime in plain view. Thus it is apparent that the procurement of an invalid search warrant does not preclude other legal justification for the search and seizure.

■ The Court finds from the evidence that, while the officers conceded the advisability of obtaining a warrant, what they did, in fact, was to seize the International truck and its contents at its mired location on the dry lake bed on the afternoon of August 5 before procuring a warrant. The stake-out by Deputies Coy and Adams and later Sheriff Schwin was a seizure. The officers intended to and did control the possession of the vehicle. They intended to and did exclude other persons from possession and used the vehicle as a decoy in the hope of apprehending a culprit. The vehicle itself, through testimony and photographs, was evidence at the trial and, in fact, the back door of the camper shell was received in evidence to show the broken condition of the hasp. This seizure was reasonable and was justified. The officers then had reasonable cause to believe that the truck contained contraband. Exigent circumstances were present. While the truck was mired in the mud, it could be dug and towed out without too much difficulty. It would have been the height of carelessness and inefficiency to have abandoned the truck in the remote Nevada desert until a search warrant could

be obtained. Seizures of vehicles under like circumstances have been uniformly sustained. United States v. Ellis, 461 F.2d 962 (2nd Cir. 1972); United States v. Castaldi, 453 F.2d 506 (7th Cir. 1971); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). Inasmuch as the initial seizure of the truck by stake-out was lawful without a warrant, the deferred thorough search of the truck by the officers the following morning was likewise lawful and the evidence seized was admissible. Chambers v. Maroney, *supra*; United States v. Ellis, *supra*; United States v. Castaldi, *supra*.

The officers did obtain a search warrant. The affidavit supporting the warrant is copied in the footnote.[1] The facts stated establish probable cause. The defendants' cogent attack on the affidavit is predicated on Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed. 2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L. Ed.2d 637 (1969). The affidavit was made by Sheriff Schwin "on information and belief" and throughout the affidavit, he referred to an "investigation" without detailing who made the investigation and the exact source of the information.

At the post-trial hearing, Justice of the Peace E. Charles Lemaire testified that on the evening of August 5, after the affidavit had been prepared, Sheriff Schwin appeared at his office. He questioned the Sheriff about the

---

1. "AFFIDAVIT FOR SEARCH WARRANT

"STATE OF NEVADA ⎱
⎰ SS
"COUNTY OF LANDER ⎰

"GEORGE E. SCHWIN, being first duly sworn, deposes and says on information and belief:

"1. Affiant has received reports of large-scale narcotics drops being made in southern Lander County.

"2. That on or aoubt(sic) August 4, 1971, an aircraft was observed burning in a Dry Lake near Grass Valley in Lander County and investigation showed the fire to be of incendiary origin. Investigation also showed a portion of the unburned part of the aircraft cabin to contain small quantities of what appeared to be a danerous drug, to-wit marijuana.

"3. That the type of aircraft involved had sufficient fuel capacity and carrying capacity to be used for large-scale transportation or importation of marijuana or other illicit drugs, and the quantity of gas in the aircraft fuel tanks indicated that a flight had been made of approximately 1000 miles, which distance is sufficient to represent a flight from Mexico. That the aircraft had been stripped of cargo and tire tracks led from the location on the dry lake where the aircraft had disabled its landing gear.

"4. That investigation further showed that the disablement of said aircraft occured on landing and the tire tracks aforesaid led to a 1960 White International Pickup, Lic No. WA 0882, 1971 License sticker No. 927641.

"5. That earlier reports of a vehicle or vehicles traveling in the area around the time the aircraft was discovered indicated a Washoe County tag.

"6. That there is in said vehicle, and apparent from external inspection several bags, plastic, of the sort used to transport marijuana and said bags contain what appears to be Mexican writing thereon.

"7. That said bags, if marijuana, would contain approximately 200 pounds of said drug and said drug in that condition emits a characteristic sweet smell such as the odor coming from said pickup.

"8. Said pickup and the contents thereof therefore constitute evidence that shows or tends to show that a public offense has been committed or that the above named defendants or others committed a public offense.

"WHEREFORE, affiant asks that a search warrant be issued for the above named 1960 white International Pickup and its camper and the environs of the downed aircraft and camper for marijuana or other dangerous drugs, any paraphernalia used in connection therewith and for any firearms or other equipment used or useful in the distribution and dissemination of dangerous drugs.

/s/ GEORGE E. SCHWIN
George E. Schwin

"Subscribed and sworn before me this 5th day of August, 1971.

/s/ E. CHARLES LEMAIRE
E. Charles Lemaire, Justice of the Peace, Lander County, Argenta Township, Nevada"

source of the information in the affidavit. He was told that paragraph one was based on rumor and that all the rest of the affidavit was based upon the direct observations of Deputy Sheriff Coy and Deputy Sheriff Watson as reported by them to Schwin, except the statements regarding the flight capacity of the Cessna 310 which had been made by Mr. Fields to Deputy Watson and reported by the latter to Sheriff Schwin. This testimony was objected to and was received subject to a motion to strike. The motion to strike was made. It is hereby denied.

■ The motion to strike is founded on United States v. Anderson, 453 F.2d 174 (9th Cir. 1971), which announces the rule that the validity of a warrant must be judged from the four corners of the affidavit filed in support of the application. With all due respect, I think the wisdom of this rule is highly questionable. The decision is, nevertheless, binding on this Court. It is distinguishable, however, because in *Anderson*, the affidavit was concededly deficient for factual insufficiency to establish probable cause. That is not so here. The Schwin affidavit shows probable cause. Its deficiency is purely technical in its failure to elaborate the meaning of "investigation". On the face of it, the word imports official investigation and the magistrate's inquiries merely served to clarify the ambiguity and to establish that the operative facts were based upon actual observations of the Sheriff's official deputies.

■ I have not found a single announcement by the Supreme Court that the determination of probable cause un-der the difficult requirements of *Aguilar* and *Spinelli* must be limited to an examination of the affidavit. To the contrary, the rule is that in passing upon the validity of a warrant, the reviewing Court may consider only information *brought to the magistrate's attention.* Aguilar v. Texas, 378 U.S. 108, at 109, n. 1, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). In fact, the discussion in *Aguilar* implies that if other information had appropriately been disclosed to the magistrate, it could have been relied upon. And as recently as March, 1971, in Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971),[2] the High Court had the question directly before it and denied a remand to develop the additional facts presented to the magistrate, not by announcing a "four corners" rule but because the state was in effect making the point for the first time in the Supreme Court.

It is patently clear from the record in this case that Justice of the Peace Lemaire had all the information before him to satisfy the exacting requirements of *Aguilar* and *Spinelli*. He performed his duty with care and appropriate respect for the protections of the Fourth Amendment. Of course, the point is also made that the oath was not administered to Sheriff Schwin until after the interrogation in which he had explained the meaning of "investigation" in the affidavit, but when he swore to the truth of the affidavit, he did so with the accompanying gloss of the meaning which he had explained to the magistrate.

A law which exalts form over substance is not worthy of the name. I can

2. "There remains the question as to the proper disposition of this case. The State urges us to remand so that it will have an opportunity to develop a record which might show that the issuing magistrate had factual information additional to that presented in Sheriff Ogburn's complaint. Brief for Respondent 8–9. Yet the State concedes, as on the record it must, that at every stage in the proceedings below petitioner argued the insufficiency of the warrant as well as the lack of probable cause at the time of the arrest. Brief for Respondent 4. Knowing the basis for petitioner's constitutional claim, the State chose to try those proceedings on the record it had developed in the state courts. See n. 4, supra. Its sole explanation for this state of affairs is that 'the state has felt, based on precedent and logic, that no court would accept the legal reasoning of petitioner.' Brief for Respondent 9. In the circumstances of this case, that justification, as we have shown, is untenable."

think of no other instance in the law where mistakes of draftsmanship are not subject to correction. An experienced prosecuting attorney may obtain a superseding indictment if error is disclosed. An information may be amended. Our finest and ablest lawyers seek and obtain leave to amend pleadings. Judges correct judgments. The appellate courts correct opinions. Yet, with respect to the procurement of warrants, which in most instances initiate the criminal process and control the success or failure of the prosecution, the draftsman of the underlying documentation, often done in haste by a layman, is held to a nice technicality of pleading which would do credit to a Blackstone or a Coke.

■ Lest I be misunderstood, let it be said that I am in full agreement with the principles that warrants of arrest should not issue and search warrants should not issue except after disclosure under oath of adequate facts showing probable cause based on reliable sources to a neutral and detached magistrate. I do, however, disapprove a rule which precludes a full showing of the facts on which the magistrate relied. Anomalously, full disclosure is the rule where the protection of the defendant is at issue. Unquestionably, if a magistrate to whom an unassailable affidavit is presented should testify that the officer, on questioning, had conceded that he had no reliable support for a material and essential averment, the warrant would be vitiated. United States v. Upshaw, 448 F.2d 1218 (5th Cir. 1971); United States v. Bolton, 458 F.2d 377 (9th Cir. 1972).

It is also the decision of the Ninth Circuit that the "four corners" rule is not a constitutional requirement. State law permitting reliance upon a magistrate's information in addition to the affidavit has been upheld. Boyer v. Arizona, 455 F.2d 804 (9th Cir. 1972).

The following quotation from the opinion of Justice Goldberg in United States v. Ventresca, 380 U.S. 102 at 111–112, 85 S.Ct. 741, at 747–748, 13 L. Ed.2d 684 (1965), is in all respects descriptive of the record made in this case:

"This Court is alert to invalidate unconstitutional searches and seizures whether with or without a warrant. See Aguilar v. [State of] Texas, supra; Stanford v. [State of] Texas, 379 U.S. 476, [85 S.Ct. 506, 13 L.Ed. 2d 431]; Preston v. United States, 376 U.S. 364, [84 S.Ct. 881, 11 L.Ed. 2d 777]; Beck v. [State of] Ohio, 379 U.S. 89 [, 85 S.Ct. 223, 13 L.Ed.2d 142]. By doing so, it vindicates individual liberties and strengthens the administration of justice by promoting respect for law and order. This Court is equally concerned to uphold the actions of law enforcement officers consistently following the proper constitutional course. This is no less important to the administration of justice than the invalidation of convictions because of disregard of individual rights or official overreaching. In our view the officers in this case did what the Constitution requires. They obtained a warrant from a judicial officer 'upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the . . . things to be seized.' It is vital that having done so their actions should be sustained under a system of justice responsive both to the needs of individual liberty and to the rights of the community."

Accordingly, it hereby is ordered that the motion to suppress be, and it hereby is, denied.