**Chester J. DOMBROWSKI, Petitioner-Appellant,**

v.

**Elmer O. CADY, Respondent-Appellee.**

**No. 71-1094.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 19, 1972.

Decided June 2, 1972.

Rehearing and Rehearing En Banc Denied July 24, 1972.

Certiorari Granted Dec. 11, 1972.

See 93 S.Ct. 556.

---

2. *Kinsey* is presently on appeal to the U. S. Court of Appeals for the Second Circuit.

William J. Mulligan, David E. Leichtfuss, Milwaukee, Wis., for petitioner-appellant.

Robert W. Warren, Atty. Gen., Mary V. Bowman, Asst. Atty. Gen., Madison, Wis., for respondent-appellee.

Before KNOCH, Senior Circuit Judge, and KILEY and FAIRCHILD, Circuit Judges.

KILEY, Circuit Judge.

The district court denied petitioner Dombrowski habeas corpus relief from his imprisonment in Wisconsin for murder. We reverse.

Dombrowski, a Chicago policeman, on September 9, 1967, drove his 1960 Dodge to Fond du Lac, Wisconsin, to visit his

brother's farm. That evening the Dodge was disabled and on September 10 was towed to the farm, where Dombrowski left it. He returned to Chicago with his brother. In Chicago, at 12:30 a. m. September 11, Dombrowski rented a 1967 black-over-maroon Ford. Dombrowski was seen about 9:40 a. m. purchasing two hand towels in Kewaskum, Wisconsin.

About 10:30 p. m. that night Dombrowski drove the Ford off a highway and crashed into a bridge abutment. A passerby took him to Kewaskum where Dombrowski notified the sheriff's office about the Ford mishap. Two deputies drove him to the scene of the accident, and on the way he told them that he was a Chicago policeman.

At the scene one of the deputies searched the inside of the Ford, looking for defendant's service revolver. The trunk was not searched. The Ford was locked by a deputy, who kept the keys, and the Ford then was towed to a private garage in Kewaskum. Dombrowski was taken to the sheriff's office in West Bend where he was "arrested" for "drunken driving" and taken to the West Bend hospital.

After leaving the Ford, one of the deputies, at approximately 2:13 a. m., went to the Kewaskum garage and—without the knowledge or consent of Dombrowski—made a warrantless search of the Ford. The deputy seized from the trunk, *inter alia*, a towel, a piece of a floor mat, a night stick and a police officer's uniform pants. All items were spattered with blood.

Dombrowski, while in the hospital during the morning of September 12, retained an attorney from West Bend. The attorney conferred with Dombrowski at the hospital and then informed the local county prosecutor that a body could be found on Dombrowski's brother's farm. At about 3:00 p. m. Washington and Fond du Lac County Sheriff's officials went to the farm and conducted an extensive warrantless search. In the search a dead body was found in the dump area about three blocks from where the Dodge was parked. Near the body a white sock was found.

One officer peered into Dombrowski's Dodge and saw the back seat saturated with what appeared to be blood, and a briefcase stained with blood. The Dodge, however, was not searched at the time. A warrant was obtained at about 8:00 p. m. and the car seat and briefcase were seized. The next morning, September 13, another search was made and a bloodied sock and piece of floor mat were seized. The items seized in the search of the Ford early on September 12 and in the searches of the Dodge were admitted into evidence, over objection, at the Dombrowski trial for the murder of the man found dead on the Dombrowski farm. The jury convicted Dombrowski and he was sentenced to life imprisonment. The Supreme Court of Wisconsin affirmed the jury conviction. State v. Dombrowski, 44 Wis.2d 486, 171 N.W.2d 349 (1969).

I.

A majority of the Wisconsin Supreme Court [1] decided that the police action which discovered the incriminatory evidence in the Ford was not a search, but an inspection, under the doctrine of Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).

This habeas proceeding followed. Dombrowski alleged, *inter alia*, that the search and seizure were unreasonable and violated his Fourth Amendment right. The district court, in denying Dombrowski habeas relief, followed the Wisconsin Supreme Court's opinion and held that the "inspection" was reason-

1. "A minority of this court, including the writer of this opinion, concludes that the seizure here was a search. . . . The minority would conclude that the search was unreasonable for the same reason that the search was declared illegal in Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777." State v. Dombrowski, 44 Wis.2d 486, 497, 171 N.W.2d 349, 355 (1969).

able and not violative of Dombrowski's Fourth Amendment right.[2] It is conceded here by the State that the "inspection" was a search.

When the inside of the Ford was searched at the scene of the mishap, the police had no knowledge of the homicide. The search of the Ford was aimed at finding Dombrowski's service revolver. The trunk was not searched, presumably because—the revolver not being in the passenger area of the Ford—there was no danger to the arresting officers. When the deferred search was made at the Kewaskum garage, the officer knew no more than he did at the time of the original search. At the time of the second search, no further evidence was needed to sustain the charge of driving while intoxicated. The search must therefore have been for incriminating evidence of other offenses. *See* United States v. Ware, 457 F.2d 828 (7th Cir. March 29, 1972) (dissenting opinion). We are not persuaded that protection was needed, since the revolver was, if any place, in the locked trunk.

■■ There was no basis upon which the police could reasonably decide that they were in danger, or that the Ford was a "fleeting target" which posed danger to evidence, or which might be driven out of the jurisdiction so as to invoke the exception to the Fourth Amendment warrant clause enunciated in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The Ford, immobilized by the accident, was locked by the police at the Kewaskum private garage in the early morning when searched. The police had no inkling that there was evidence in the Ford of any offense by Dombrowski other than the drunken driving of which the police knew. And it seems highly unlikely that in the small town of Kewaskum there was danger of anyone going to the garage, getting into the Ford, and driving it away. *Cf.* United States v. Castaldi, 453 F.2d 506 (7th Cir. 1971). When the police searched the Ford at the scene of the accident they had probable cause to arrest Dombrowski for driving while intoxicated. They had no justification to search except to look for the gun in the interest of safety. There was no justification therefor under Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L. Ed.2d 419 (1970),[3] for the warrantless deferred search.

■■ Under Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L. Ed.2d 564 (1971), warrantless searches are per se unreasonable. There are but few exceptions, and to come within one of them it must be shown that the "exigencies of the situation" rendered the warrantless search imperative. *Coolidge* at 454–455, 91 S.Ct. 2022. There is no showing in the record here of any exigency justifying the deferred search of the Ford.

We think the deferred search was unreasonable under the Supreme Court's holding in Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). In *Preston* acting upon a telephone complaint that "three suspicious men acting suspiciously," police found Preston and two other men sitting in a

---

2. The court did not specifically pass upon Dombrowski's allegations that the searching of the farm and the Dodge was illegal or that the exercise of his Sixth Amendment right was interfered with. Dombrowski v. Cady, 319 F.Supp. 530, 533 (D.C.1970).

3. In *Chambers*, almost immediately after an armed robbery of a gas station, police were told a blue compact station wagon was used by the four robbers, one of whom wore a green sweater and another a trench coat. Within an hour a blue compact station wagon carrying four men was stopped two miles from the gas station. Chambers was one of the four men and was wearing a green sweater, and a trench coat was in the car. The occupants were arrested, the car was driven to the police station and there searched without a warrant. The Court held a warrant unnecessary, since the police had probable cause to search the car without a warrant on the highway—because of the exigent circumstances—and the probable cause factor carried over to the station and the search there was reasonable.

parked car in a business district. *Preston* at 365, 84 S.Ct. 881. Under questioning the men gave evasive answers, stated they were unemployed, and had among them only twenty-five cents. The men were arrested for vagrancy and taken to the police station. The car was taken by police to a garage. After the men were booked for vagrancy, police went to the garage and a warrantless search of the car produced two loaded guns from the glove compartment and various incriminating items from the trunk. The warrantless searches "at another time and place" were held unreasonable since the men were under arrest and were no danger to the officers, could not have destroyed the evidence of the "crime" of vagrancy, or could not have removed the car from the jurisdiction. *Preston* at 368, 84 S.Ct. 881.

Here the bloodied towel, piece of floor mat, night stick, and officer's uniform pants seized in the deferred search substantially contributed to Dombrowski's conviction of murder. The towel and piece of floor mat were matched at the trial with evidence seized in a subsequent search of Dombrowski's Dodge on the farm the morning of September 13. The trial was therefore tainted by the use of the bloody towel and piece of mat, seized in the unreasonable warrantless search of the Ford. We hold that the trial court committed error of constitutional dimension in denying Dombrowski's motion to suppress the items seized in the Ford and admitting them into evidence at the murder trial over his objection.

## II.

■ Should Dombrowski be tried again it is likely that Wisconsin will intend to use evidence gathered in the searches of the farm and the Dodge. The reason is that the Wisconsin Supreme Court has decided the searches of the farm and Dombrowski's Dodge on September 12 and 13 were not illegal[4] and that no constitutional error was committed in admitting the products of the searches into evidence. Assuming the case is retried, the trial court would be bound by that decision and corresponding rulings would likely be made upon Dombrowski's objections. We are not bound by the Wisconsin Supreme Court decision, however. *See* Townsend v. Sain, 372 U.S. 293, 312, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). We deem it prudent to preclude, if we can, serious error at a second state trial. We conclude therefore that we should consider Dombrowski's constitutional challenges of the September 12 and 13 searches of the Dodge.

■ The five hour warrantless search of the farm on September 12 began about 3:00 p. m. The sheriff's police before entering the farm had possession of the items seized in the search of the Ford in Kewaskum and had received the subsequent information from Dombrowski's attorney that a body could be found at the farm. It is clear that police may not use evidence previously seized in an illegal search to justify probable cause for a subsequent arrest. Such a bootstrap practice would be abhorrent to our constitutional search and seizure principles. The validity of the warrantless search accordingly must be based upon the information given by the attorney.

■ We see no reason for denying to the hearsay statement of the attorney the reliability given to hearsay information exchanged between law enforcement officers. The courts have found information from one policeman to another sufficiently reliable for issuance of a warrant. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *accord*, Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The officers accordingly could well give credence to what Dombrowski's attorney told them. And we think that police proceeding forthwith onto the farm, without a warrant, to find the body was prudent police work. The person might not be dead and might

4. State v. Dombrowski, 44 Wis.2d at 498–499, 171 N.W.2d 349.

die if not rescued. We think that to require the police to have delayed the search until a warrant was obtained would be unreasonable under these circumstances.

This court's decision in United States v. Hull, 441 F.2d 308, 313 (7th Cir. 1971), does not preclude our conclusion. The court there decided that a defendant's Fifth Amendment right against self-incrimination cannot be balanced against police officers' "sincere attempts" to rescue a missing undercover agent, since involuntary incriminating statements "can be no less compelled in one type of case than in another." The reason is that no balancing is needed to determine that an involuntary self-incriminating statement violates the Fifth Amendment, i. e., a good end does not justify unlawful means. However, in search and seizure cases, assuming a good end, such as protecting the body if alive, the question is whether the means —the search and seizure—are lawful. Whether the means are lawful, however, requires balancing of circumstances, e. g., do the circumstances on balance show probable cause, fleeting target, incident to arrest. We hold that entry of the farm without warrant was lawful and the search of the farm for the body was reasonable. The lawful farm search produced the body. Neither do we see an unreasonable widening of the legal search in seizing the white sock in plain view nearby.

After the body and sock were found, the police officer peered into the Dodge and observed the blood soaked back seat and briefcase. On the basis of what was found and observed, the police at about 8:00 p. m. obtained a warrant to search the Dodge. The warrant was executed and the return of the warrant listed the items seized. The incriminat-

ing piece of mat and the bloodied white sock were not listed in the return and presumably had not been seen the night before.

The next morning, September 13, Mauer, a crime laboratory specialist,[5] searched the Dodge and "[took] up" the piece of the floor mat and a bloody sock, and labeled them. Dombrowski, 44 Wis.2d at 498, 171 N.W.2d 349. He acted under "authority" of the warrant issued the previous night. The Wisconsin trial court denied Dombrowski's motion to suppress these two items and later admitted them into evidence over objection. The bloodied piece of mat was matched at the trial with the piece seized in the illegal search of the Ford, and the bloody sock matched with the sock seized near the body on the farm.

Dombrowski challenges these searches as violative of his Fourth Amendment right, and the use of the evidence seized as constitutional error.

■ The Dodge had been placed on the farm where Dombrowski could legitimately place it, the search was directed at his Dodge and, by indirection, at him. He has standing therefore to challenge the legality of the search. See Jones v. United States, 362 U.S. 257, 267, 80 S. Ct. 725, 4 L.Ed.2d 697 (1960).

■■ The question with respect to the search [6] of the Dodge the night of September 12 requires a determination whether the product of the police officer's observation of the inside of the Dodge was unlawful under the "plain view" doctrine. The plain view doctrine applies only where the discovery was "inadvertent . . . . But where the discovery is anticipated, where the police know in advance the location of the evidence and intend to seize it, the situation is altogether different." Coolidge,

5. Crime Laboratory Division of the Wisconsin Department of Justice.

6. We need not decide whether the attorney's statement to the police and the testimony of Officer Howard in obtaining

the search warrant were fruit of the unlawful search of the Ford. The police were lawfully on the farm and the plain view doctrine justifies the seizure of the items that were observed by Howard in the Dodge.

403 U.S. at 469–470, 91 S.Ct. at 2040.[7] We cannot read the record before us to give any indication that the police officer who peered into the Dodge had no right to be where he was when he observed what was in the car *(cf. Harris,* 390 U.S. at 236, 88 S.Ct. 992), or that he knew at the time there was evidence in the Dodge and intended to seize it. *Coolidge,* 403 U.S. at 470, 91 S.Ct. 2022. Consequently we read the record as showing that the observation was "inadvertent" and what was seen could be properly used to justify the search. Our conclusion is that the back seat and briefcase were properly seized in a lawful search.

■ The Wisconsin Supreme Court decided that the bloodied piece of mat and white sock seized by Mauer, the crime laboratory specialist, were "in plain view and subject to seizure without a warrant." *Dombrowski,* 44 Wis.2d at 499, 171 N.W.2d at 356. We disagree. We assume that Mauer was rightfully at the scene. But it is clear that his discovery was not "inadvertent." He was searching for further evidence concerning the homicide. Accordingly, the plain view doctrine does not justify his warrantless search and seizure.

The Wisconsin court justified Mauer's taking the bloodied items as authorized under the warrant issued the previous night. We have expressly refrained from deciding whether that warrant was valid. See footnote 6. Assuming arguendo, however, that the warrant was validly issued, the objects described in the warrant were the bloodied back seat and the briefcase. The police did not observe, use in the application for the warrant, list in the return, or seize, that night, the bloodied sock and piece of mat. These two items were seized by Mauer the next day.

■ There was no continuing authority under the warrant issued the previous night. First, these items were not described in the warrant and presumably were not observed that night. Second, when the warrant was returned —before Mauer came on the scene—it was *functus officio.* A "new ball game," so to speak, began when Mauer made his "inspection."

Having found that Mauer unlawfully seized the bloodied sock and piece of mat, we conclude that their admission into evidence was constitutional error. The conviction is void.

We reverse the district court judgment dismissing the petition for the writ and remand with direction to grant the relief prayed for in the petition unless the Wisconsin authorities grant Dombrowski a new trial within a reasonable period to be set by the district court.

Reversed and remanded.

KNOCH, Senior Circuit Judge (dissenting).

The trial judge who saw and heard the witnesses credited their testimony that the local police officers did believe that all Chicago policemen carried sidearms. Granted this belief, it was only reasonable to look for the apparently missing sidearm. It would be unreasonable to rely on information from the petitioner whose state had so impressed them that they sought a sobriety test for him. The original cursory check of the glove compartment and back seat was hardly sufficient. It would be careless to leave a firearm in the trunk of an automobile in a public garage, even in the small town of Kewaskum where the majority believes there was little chance of anyone's improperly getting possession of the automobile. If the firearm had been there, had been improperly secured by some unauthorized person and used to injure a citizen, then the police would have been remiss in their performance of duty and morally responsible for whatever happened as a

7. *See also,* The Supreme Court 1970 Term, 85 Harv.L.Rev. 243–250 (1971).

result. Despite the concession of the respondent, I find more persuasive the conclusion of the majority of the Wisconsin Supreme Court that this check of the automobile was not a search, but an inspection. I would affirm the conviction.