UNITED STATES of America, Appellee,

v.

**Karriem Wali MUHAMMAD, a/k/a Charles William Cannon, Appellant.**

Nos. 79–5274, 79–5275.

United States Court of Appeals, Fourth Circuit.

Argued March 6, 1981.

Decided Sept. 1, 1981.

Rehearing and Rehearing En Banc Denied Dec. 3, 1981.

Stanley J. Reed, court appointed, Asst. Federal Public Defender, Baltimore, Md. (Fred Warren Bennett, Federal Public Defender, Baltimore, Md., on brief) for appellant.

Stuart O. Simms, Asst. U. S. Atty., Baltimore, Md. (Russell T. Baker, Jr., U. S. Atty., Baltimore, Md., on brief) for appellee.

Before BUTZNER, PHILLIPS, and MURNAGHAN, Circuit Judges.

BUTZNER, Circuit Judge:

Karriem Wali Muhammad appeals his convictions in two separate trials for armed bank robbery, unarmed bank robbery, and bank larceny. Muhammad claims that the trial court erred in both cases by refusing to suppress evidence found in the trunk of his car. We affirm the convictions of armed robbery and remand for vacation of the concurrent sentences imposed for the lesser included offenses.[1]

I

Muhammad was arrested by FBI agents and charged with being one of two participants in a Maryland bank robbery. A few days after he was released on bail, two men, using tactics markedly similar to those of the robbery for which Muhammad had been arrested, robbed another Maryland bank. Immediately after the robbery, one of the tellers at the second bank identified Muhammad from a photographic spread. A local police officer also informed the FBI agents that she had observed a green, four-door, American-make vehicle stopped in a

---

1. The district court noted that it would vacate the sentences for the lesser included offenses if the judgment for armed robbery were affirmed.

no-parking zone in the vicinity of the bank about the time of the robbery. She had seen one man behind the wheel and one at the back of the vehicle near the trunk. An FBI agent present at the scene knew that Muhammad drove a four-door green Matador.

On the basis of the photographic identification and the officer's description of the car, the agents went to Muhammad's apartment where they observed in a parking lot a green Matador whose license plate was registered to Muhammad. The agents set up surveillance, and an hour later they saw Muhammad and his wife approach the vehicle. The police officer, who had accompanied the agents, said that Muhammad could be one of the men she had seen near the bank. Muhammad opened the car's trunk but closed it quickly when he saw the agents approach. He was then arrested. Another police officer mentioned that several years ago an armed accomplice had come out of the trunk of a stopped car and engaged the investigating officers in a gun battle.

Two agents remained with the car while others took Muhammad to be booked. The agents contacted an assistant United States attorney in Washington, D. C., to ask what they should do with the car. The attorney erroneously replied that there was insufficient cause to obtain a search warrant for the car. The agents then phoned a Baltimore assistant United States attorney, who advised them to impound the car and obtain a warrant before searching it.

Several hours after the arrest, the agents had the car towed to the FBI garage in Washington. Concerned about the possibility of a concealed accomplice, the agents decided to search the trunk. One of the agents forced the lock, while the other stood guard with drawn gun. Inside the trunk were a handgun, a box of ammunition, a bagful of money (including red-dyed "bait" money from the robbed bank), and various articles of clothing. This evidence was introduced at both of Muhammad's trials.

The district court denied the suppression motion, apparently on alternate grounds.[2] First, the court found that there was probable cause to search the car at the scene of the arrest. It held that officers having probable cause to make a warrantless search of an automobile at the scene may delay their search until the car has been seized and taken to police headquarters. Second, the court said that the officers' suspicion regarding the presence of an accomplice in the trunk also justified the warrantless search:

> They could have searched at the scene but they waited until later and while there may be, perhaps some question as to whether there was great fear that somebody might be in the trunk, it is conceivable, and in those circumstances you don't take a chance because the one time that you don't expect something to happen, that's when it happens and somebody gets killed. And I think that they acted reasonably.

## II

Muhammad acknowledges that there was probable cause to search the car at the time of his arrest. He insists, however, that there were no exigent circumstances to justify the subsequent warrantless search.

Ample precedent supports the district court. In *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), the defendants argued that officers should be allowed only to immobilize a car after it is stopped and should be required to obtain a warrant before searching it. The Court rejected this argument and upheld the validity of the search:

> For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate

**2.** Although the motion to suppress was made in the case charging Muhammad with the second robbery, the government had given Muhammad notice of its intention also to use the evidence at the trial for the first robbery. Therefore, the single suppression hearing controlled both trials.

and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.

On the facts before us, the blue station wagon could have been searched on the spot when it was stopped since there was probable cause to search and it was a fleeting target for a search. The probable-cause factor still obtained at the station house and so did the mobility of the car unless the Fourth Amendment permits a warrantless seizure of the car and the denial of its use to anyone until a warrant is secured. In that event there is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained. 399 U.S. at 52, 90 S.Ct. at 1981.

Five years later, in *Texas v. White*, 423 U.S. 67, 68, 96 S.Ct. 304, 305, 46 L.Ed.2d 209 (1975), the Court characterized *Chambers* as holding that "police officers with probable cause to search an automobile at the scene where it was stopped could constitutionally do so later at the station house without first obtaining a warrant." The Court reiterated that probable cause developed at the scene still obtains at the station house.

In response to *Chambers* and *White*, Muhammad relies on *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Because there the search warrant was defective, the issue arose whether the "warrantless" seizure of the defendant's car and the subsequent station house searches, conducted over the course of a year, violated the fourth amendment. In determining that the searches were not constitutional, Justice Stewart concluded that although there had been probable cause to search the vehicle when the defendant was arrested, there were no exigent circumstances that would have justified a warrantless search at that time:

> And surely there is nothing in this case to invoke the meaning and purpose of the rule of *Carroll v. United States*—no alerted criminal bent on flight, no fleeting opportunity on an open highway after a hazardous chase, no contraband or stolen goods or weapons, no confederates waiting to move the evidence, not even the inconvenience of a special police detail to guard the immobilized automobile. In short, by no possible stretch of the legal imagination can this be made into a case where "it is not practicable to secure a warrant," *Carroll, supra,* [267 U.S. 132] at 153 [45 S.Ct. 280 at 285, 69 L.Ed. 543] and the "automobile exception," despite its label, is simply irrelevant. 403 U.S. at 462, 91 S.Ct. at 2035–2036.

Having determined that a warrantless search would not have been permissible at the time of the arrest, the plurality opinion held that *Chambers* was of no help to the state in justifying the subsequent station house searches. 403 U.S. at 463, 91 S.Ct. at 2036.

*Coolidge* and *Chambers* are difficult, but not impossible, to reconcile. Most courts agree that when a moving car is stopped by law enforcement officials who have probable cause to search the car, *Chambers* permits both an immediate warrantless search and a subsequent warrantless station house search. *See, e. g., United States v. Colclough,* 549 F.2d 937 (4th Cir. 1977); *United States v. Chulengarian,* 538 F.2d 553 (4th Cir. 1976); *United States v. Maspero,* 496 F.2d 1354 (5th Cir. 1974). In contrast, when the car is stationary at the time of arrest, *Coolidge* has led some courts to require proof of exigent circumstances to justify a warrantless search. *See, e. g., United States v. Farnkoff,* 535 F.2d 661 (1st Cir. 1976); *United States v. Brennan,* 538 F.2d 711 (5th Cir. 1976). If an exigent circumstance existed at the time of arrest, a subsequent station house search conducted within a reasonable time is permissible, even though the exigent circumstance may have dissipated during the interim between arrest and search. *United States v. Castaldi,* 453 F.2d 506 (7th Cir. 1971). *See* LaFave, *Search and Seizure,* § 7.2 at 526–30 (1978).

The distinction between parked and moving cars has been criticized as analytically

flawed. As Justice White explained in his separate opinion in *Coolidge,* 403 U.S. at 525, 91 S.Ct. at 2067:

> Although [the line of cases from *Carroll* to *Chambers*] may, as the Court argues, have involved vehicles or vessels in motion prior to their being stopped and searched, each of them approved the search of a vehicle that was no longer moving and, with the occupants in custody, no more likely to move than the unattended but movable vehicle parked on the street or in the driveway of a person's house. In both situations the probability of movement at the instance of family or friends is equally real, and hence the result should be the same whether the car is at rest or in motion when it is discovered.

Assuming, however, that some exigent circumstances must be present when the car is parked, we think those factors were present here.

■ In contrast to the absence of exigent circumstances in *Coolidge,* in this case (1) there was probable cause to believe the car contained contraband or stolen goods or weapons; (2) there had been at least two individuals involved in the bank robbery and thus there may have been one or more confederates available to move the evidence; and (3) because Muhammad's wife was present at the arrest, she could alert a confederate. Also, we find no error in the district court's conclusion that the search was justified by the agents' professed concern that Muhammad's accomplice might still be in the car's trunk. As to the existence of such fear, we cannot say that the district court's finding was clearly erroneous. Assuming such concern on the part of the agents, we think that the fourth amendment's prohibition against unreasonable searches must be read in light of the strong public interest in ensuring the safety of law enforcement officers. *See, e. g., Terry v. Ohio,* 392 U.S. 1, 23, 88 S.Ct. 1868, 1881, 20 L.Ed.2d 889 (1968) ("[I]t would be unreasonable to require that police officers take unnecessary risks in the performance of their duties").

■ These were exigent circumstances that would have justified a warrantless search of the parked car at the scene of the arrest. Even if some of these circumstances had dissipated by the time of the search at the FBI garage, the subsequent search was constitutional. *See Chambers v. Maroney,* 399 U.S. 42, 59, 90 S.Ct. 1975, 1985, 26 L.Ed.2d 419 (1970); *Coolidge v. New Hampshire,* 403 U.S. 443, 464, 91 S.Ct. 2022, 2037, 29 L.Ed.2d 564 (by implication); *United States v. Chadwick,* 433 U.S. 1, 12, 97 S.Ct. 2476, 2484, 53 L.Ed.2d 538 (1977) (dictum); *United States v. Castaldi,* 453 F.2d 506, 508–11 (7th Cir. 1971).

*AFFIRMED AND REMANDED.*

MURNAGHAN, Circuit Judge, dissenting:

I respectfully dissent. It is true that the FBI agents had probable cause to search immediately following Muhammad's arrest; indeed, Muhammad concedes as much. Probable cause alone, however, is not sufficient to authorize a search, *Walter v. United States,* 447 U.S. 649, 657–58 n.10, 100 S.Ct. 2395, 2401–2402 n.10, 65 L.Ed.2d 410 (1980); there must also be a warrant for the search, or exceptional circumstances which excuse the failure to obtain a warrant. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *McDonald v. United States,* 335 U.S. 451, 456, 69 S.Ct. 191, 193, 93 L.Ed. 153 (1948). No such circumstances existed here; consequently, the warrantless search by FBI agents of the trunk of Muhammad's car violated the Fourth Amendment, and the evidence seized during the course of that search should have been suppressed.

"The word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away." *Coolidge v. New Hampshire,* 403 U.S. 443, 461–62, 91 S.Ct. 2022, 2035–2036, 29 L.Ed.2d 564 (1971); rather, the so-called "automobile exception" to the Fourth Amendment's warrant requirement is a subset of the exigent circumstances exception to the Fourth Amendment. *Coolidge v. New Hampshire, supra,* 403 U.S. at 460–62, 91 S.Ct. at 2034–2035; *Carroll v.*

*United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). That is, the fact that the subject of the search is an automobile, which often is possessed of great mobility, is a factor to be considered in assessing whether the circumstances are exigent so as to excuse the failure to obtain a warrant, but is not dispositive; there must still be exigency.

There was no exigency here. At approximately 10:30 a. m., within a short time after the robbery of a bank, FBI agents proceeded to the residence of a person suspected of having participated in the robbery. They observed parked on a commercial parking lot across the street from the residence,[1] a car matching the description of a car which had been seen in the vicinity of the victim bank at about the time the robbery was taking place. Shortly thereafter the agents learned that the car was registered to the suspect. The agents then began surveillance of the car. Approximately one hour later, defendant, accompanied by his common-law wife, approached the car, opened the trunk and shut it again quickly when he saw the agents approach. Defendant was arrested at about 11:30 a. m. and taken to FBI headquarters by several officers while at least two more remained with the car. They guarded the car at the commercial parking lot for another 4½ hours during which time they contacted the offices of the United States Attorneys in both the District of Columbia and Baltimore preparatory to seeking a search warrant.[2] However, they made no attempt to obtain a search warrant. At approximately 4:00 p. m. the agents had the car towed to FBI headquarters and at 4:30 p. m. searched the car without obtaining a warrant.[3]

Webster's Third New International Dictionary (1976, Unabridged) defines "exigent" as

exacting or requiring immediate aid or action: pressing, critical.

Black's Law Dictionary (Revised Fourth Ed. 1968) agrees:

> Exigence, or Exigency. Demand, want, need imperativeness; emergency, something arising suddenly out of the current of events; any event or occasional combination of circumstances, calling for immediate action or remedy; a pressing necessity; a sudden and unexpected happening or an unforeseen occurrence or condition. [Citations omitted.] Something arising suddenly out of circumstances calling for immediate action or remedy, or where something helpful needs to be done at once, yet not so pressing as an emergency. [Citation omitted.]

The exigent circumstances exception to the warrant requirement developed precisely because of situations requiring immediate action; waiting to search until a warrant could be obtained would risk the destruction or disappearance of the object of the search or its removal from the jurisdiction, or would increase the risk of harm to law enforcement officers or innocent bystanders. *E. g., United States v. Turner*, 650 F.2d 526 (4th Cir. 1981); *United States v. Gardner*, 627 F.2d 906 (9th Cir. 1980); *United States v. Williams*, 626 F.2d 697 (9th Cir. 1980), *cert. denied*, 449 U.S. 1020, 101 S.Ct. 586, 66 L.Ed.2d 481 (1980); *United States v. Gray*, 626 F.2d 102 (9th Cir. 1980).

Clearly, the FBI agents did not believe that immediate action was necessary here— they held the car immobilized in the parking lot and made overtures aimed at obtaining a warrant, but otherwise took no action at all. Thus there is no basis for a contention that the agents had a reasonable belief

---

1. Defendant apparently had no driveway or property of his own on which to park the car and habitually used the parking lot as a place in which to leave his car while at home.

2. The District of Columbia U. S. Attorney incorrectly advised the agents that they had insufficient probable cause to obtain a search warrant. The Baltimore U. S. Attorney advised the agents, properly, I would hold, to impound the car and obtain a search warrant before searching it. Neither, therefore, advised that a warrantless search would be proper. To the contrary, each U. S. Attorney accepted that a warrantless search would be improper.

3. The government expressly disavows any reliance on an inventory search rationale in this case.

that delay inherent in obtaining a warrant would be detrimental to people or to evidence.[4] Nor did anything occur thereafter which created a need for immediate action; the only thing that happened was the towing of the car to the FBI garage. Since the car was already immobile for all practical purposes, the relocation to the FBI garage only served to decrease any possible risk to the public from whatever might be in the trunk from possible access by the public.

There simply was no "fleeting" vehicle here. The car was not stopped while it was moving down the highway, nor was it discovered parked on a public highway; it was parked in a parking lot which defendant habitually used as he would use a driveway. The car was, of course, mobile in the sense that it had an engine and four wheels and was capable of being moved, but any possibility that it might be moved was no greater than the possibility that the car in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971),[5] or the footlocker in *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), would be moved. Agents here had arrested defendant, the owner of the car, before he even approached the driver's seat, and the record is quite clear that the agents intended to, and did, deny access to the car to anyone but themselves. Nor is there any need to speculate on whether the number of agents was such that some could have been left to secure the car while others sought a warrant, *compare United States v. Bradshaw*, 490 F.2d 1097, 1102–04 (4th Cir. 1974), *cert. denied*, 419 U.S. 895, 95 S.Ct. 173, 42 L.Ed.2d 139 (1974); and *United States v. Mitchell*, 538 F.2d 1230, 1232–33 (5th Cir. 1976), *cert. denied*, 430 U.S. 945, 97 S.Ct. 1578, 51 L.Ed.2d 792 (1977); agents *were* in fact left to guard the car in numbers which were sufficient, both prospectively—from the viewpoint of the agents making the decision—and retrospectively—as events ac-

---

**4.** This sufficiently distinguishes the instant case from *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), on which the majority relies. In that case, law enforcement officers stopped on a public street a moving car matching the description of a car which had been seen leaving the scene of a robbery. The occupants of the car were arrested and, to get the vehicle off the public highway, the police towed the car to the police station where it was later searched. The Court decided that there was little difference, for Fourth Amendment purposes, between an immediate search at the scene of the arrest and impounding the car while the police went to a magistrate to obtain a warrant based on probable cause.

In the instant case, however, no circumstances existed which would authorize an immediate search; consequently *Chambers* does not justify the later search at the FBI garage.

Nor was there in *Chambers* any extended delay between the stop on a public street and the removal to the police station. Here there were 4½ hours of exigency-dissipating elapsed time during which the car remained on the privately owned, commercial parking lot customarily used by the defendant to leave his car when at home.

In *Texas v. White*, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1976), a *per curiam* case decided without full briefing and oral argument, the Court, applying *Chambers v. Maroney* to a case where the car was immediately removed to the police station, held that a thirty to forty-five minute interval at the police station while the car owner/suspect was questioned did not op-

erate to vitiate the probable cause to search existing when the car was stopped, or the coexisting exigency. Similarly, in the instant case, the *probable cause* to search the car existed at the time of Muhammad's arrest and continued to exist when the car was searched in the FBI garage. But the exigency did not. Probable cause alone is not, however, sufficient for a search; the Fourth Amendment mandates that there must be a warrant, absent special circumstances which excuse the failure to obtain a warrant, which did not exist here. Exigency is the only exception on which the government relies, and there was no exigency to excuse the getting of a warrant present at the time the search was made.

*Texas v. White*, in which a search which could have been made at the scene without a warrant, because of exigency, was deemed still to be authorized later at the station house, cannot justify the search here where no circumstances authorizing the *warrantless* search existed at the scene of the arrest or arose during the ensuing course of the afternoon. The same consideration serves to distinguish *United States v. Chulengarian*, 538 F.2d 553 (4th Cir. 1976).

**5.** *Coolidge* appears to have drawn a distinction between a vehicle encountered on a public street, and a car found parked on private property. In light of what we have elsewhere stated in the Dissent, it is not necessary that we consider that possible point for holding the search to be unconstitutional.

tually occurred, to keep the car secure while other agents transported defendant to FBI headquarters, where certainly there was sufficient personnel that someone could go to a magistrate and seek a warrant. Thus it is obvious that none of the usual justifications for finding exigent circumstances where an automobile is involved existed here.[6]

Finally, the government tries to build a case of exigency by referring to the peculiar facts of the case and to a far-fetched assumption based on them. Those circumstances are a police officer's expressed concern that defendant's accomplice "might" be hiding in the trunk along with the fact that the car was parked on a commercial lot near a public sidewalk. Although the district judge found the possibility "conceivable" on the basis of a single unrelated incident which had occurred several years previously in a nearby county where somebody else's accomplice had hidden in a trunk and engaged law enforcement officials in a gun battle upon emerging, it is indeed highly implausible. Adopting such a basis for avoiding the Fourth Amendment's stringent warrant requirements is an open invitation to riots of imagination, at the expense of facts and of reality. Defendant's brief compellingly points out:

> If the mere fact that an armed robber had been secreted in a car trunk in an armed robbery case in Montgomery County, Maryland some several months before is sufficient to create exigent circumstances justifying entry into appellant's trunk then in virtually every case arising

in Fourth Circuit jurisdictions where a suspect is at large, sufficient exigent circumstances to search an accomplice's car would exist.

The police must also have at least reasonable factual grounds for a suspicion that an armed person is hiding in the trunk in order to create the kind of exigency which would justify the by-passing of the Fourth Amendment dictates to permit a warrantless search of the trunk. In the instant case, even if the agents had a reasonable suspicion that a person was hiding in the trunk, they clearly did not believe that the circumstances were exigent; they took no immediate action, either to search the trunk at once or to remove the car and hence the articulated potential hazard from the location where they now claim the public had ready access. See G. M. Leasing Corp. v. United States, 429 U.S. 338, 358–59, 97 S.Ct. 619, 631–632, 50 L.Ed.2d 530 (1977); United States v. Bradley, 571 F.2d 787, 790 (4th Cir. 1978).

It is possible, of course, that a wiser course in cases where an armed person may be hiding in a trunk is to wait rather than to enter the trunk immediately. If waiting is the wiser course, however, it is certainly possible to obtain a warrant while waiting and therefore there is no exigency pressing for search without a warrant. As has been noted above, obtaining a warrant here would not have diminished the security being maintained on the car since several agents over and beyond those guarding the car were available to accompany defendant to FBI headquarters.[7] The only event oc-

---

**6.** The other common justification for warrantless searches in cases involving automobiles—a lowered expectation of privacy—is also inapplicable here. The search in question here was of the locked trunk of the car, a place quite commonly used by ordinary citizens as a repository for personal effects which they wish to keep hidden from public view. For example, travelers often carry their luggage and other personal belongings in the trunks of their cars so that, while stopped at a restaurant or motel, their effects will not be in public view, or a temptation to any thief who might walk by. Similarly, shoppers often put their purchases in the trunks of their cars to keep them out of the

view of inquisitive and acquisitive people while the car is in a parking lot.

**7.** Had the agents attempted to get a warrant, and had there really been a person hiding in the trunk, it is possible, of course, that something might have occurred during the course of the afternoon such that an immediate search, without waiting for the warrant to arrive, might have become necessary. However, the possibility that circumstances will become exigent in the future can justify a warrantless search only if they do in fact become exigent and a search is made in response to the exigency. Allowing a warrantless search at a time when circumstances are not exigent and never have been,

curring during the afternoon was the eventual towing of the car to the FBI garage. This certainly did not create any exigency; in the FBI garage the car was more secure, more easily guarded and any danger to the public significantly less than while it was on the commercial parking lot.

Because I think that no exigent circumstances existed which would excuse the agents' failure to obtain a warrant, I would hold that the warrantless search of defendant's trunk violated the Fourth Amendment.

just because they *might* in the future become exigent would completely vitiate the Fourth Amendment. In any situation it is possible that an unforeseen occurrence *might* create exigent circumstances.