**UNITED STATES of America,
Appellant,**

v.

**Michael Ray HALEY; William Harry
Riehl, Appellees.**

No. 80–5105.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 8, 1981.

Decided Jan. 21, 1982.

Certiorari Denied June 14, 1982.
See 102 S.Ct. 2928.

Marye L. Wright, Asst. U. S. Atty. (Wayne A. Rich, Jr., Acting U. S. Atty., Charleston, W. Va., on brief), for appellant.

W. Stuart Calwell, Jr., Nitro, W. Va. (Calwell, McCormick & Peyton, L. C., Nitro, W. Va., on brief), and Michael C. Allen, Chesterfield, Va., for appellees.

Before WINTER, Chief Judge, BRYAN, Senior Circuit Judge, and HALL, Circuit Judge.

K. K. HALL, Circuit Judge:

The United States appeals from a district court order suppressing the introduction into evidence of marijuana which state police officers and a Federal Drug Enforcement agent seized from the defendants' automobile. Suppression was ordered because the officers failed to obtain a search warrant from a state court of record as required by Rule 41 of the Federal Rules of Criminal Procedure. We conclude that compliance with Rule 41 was unnecessary because the circumstances justified a warrantless search, and therefore reverse the suppression order and remand the case for further proceedings.

In the late morning hours of February 10, 1980, West Virginia State Trooper Clayton Alford was on routine road patrol on Interstate 79 just north of Charleston, West Virginia. Alford observed a 1977 Chevrolet Impala bearing Florida license plates traveling north at 74 miles an hour. He pursued the vehicle and ordered its driver to stop. Upon stopping, the driver, Michael Haley, immediately got out, met Alford at the rear of the car, and then went with Alford to sit in the trooper's police cruiser.

While sitting in the cruiser, Alford smelled an intense odor of marijuana emanating from Haley's body. In response to Alford's questioning, Haley denied that he had been smoking marijuana or that he had been in the presence of anyone who had.

The registration revealed that the automobile was registered in Florida to Daniel G. Azzole. Haley said that Azzole was a friend of his passenger, William Riehl, and that Riehl had borrowed the car for a trip.

Having detected the marijuana odor on Haley, the officer suspected that the automobile was carrying marijuana. After writing a speeding citation, Alford left Haley in the cruiser and walked to the passenger side of the vehicle where Riehl was seated. When Riehl rolled down the window, Alford again smelled an intense marijuana odor inside the car and on Riehl's body.

The defendants refused to consent to a search of their automobile, so Alford placed them in the cruiser and told them that he would get a search warrant. Riehl then admitted that a small quantity of marijuana was in the car. He led Alford to the passenger side where he removed from beneath the seat a small bag containing marijuana and some pills. Alford placed both defendants under arrest and radioed for a tow truck to tow the car to the state police barracks in South Charleston.

When the tow truck arrived, Alford removed the keys from the car's ignition and opened the trunk. The trunk was completely filled with large garbage bags made of an opaque plastic. According to Alford, one bag had a two-inch hole through which he could see marijuana. The tow truck operator testified that the trooper "stuck his fingers in the bag and ripped the bag open."[1] In any event, Alford decided he had better get a search warrant, so he closed the trunk and directed the tow truck operator to take the car to the state police barracks.

Alford notified the officers on duty at the barracks that he was bringing in the defendants and their automobile. Those officers contacted Randy James, a Federal Drug Enforcement agent, and informed him of the morning's occurrences. James went to the barracks, helped Alford prepare an affidavit for a search warrant and accompanied the officers to the Kanawha County Courthouse where Alford presented the affidavit to a county magistrate.

The magistrate gave Alford a document which Alford believed was a search warrant.[2] The officers and James returned to the barracks and searched the car. The search produced six garbage bags of marijuana under some clothing on the back seat of the car, and eleven garbage bags and two cardboard boxes of marijuana in the trunk. In all, two hundred and four pounds of marijuana were seized.

Haley and Riehl were indicted for violations of 18 U.S.C. § 2 and § 1952(a)(3), and 21 U.S.C. § 841(a)(1). The defendants' first motion to suppress introduction of marijuana was denied on the ground that contraband was seized during a valid warrantless search. Upon a motion to reconsider, the court vacated its earlier decision and ruled that because a federal agent had participated in the search, the warrant should

have been procured from a court of record pursuant to Rule 41. Because West Virginia magistrate courts are not courts of record, the district court ordered the suppression of the contraband.

On appeal, the government first contends that the officer's failure to comply with Rule 41 was non-prejudicial because the state search warrant procedure satisfied Fourth Amendment requirements. However, the record discloses that a valid state warrant was never issued, so the government's argument completely lacks a factual basis. Therefore, we do not address this contention.

Alternatively, the government argues that the circumstances justify a warrantless search of the vehicle and the containers found inside. We agree. When a law enforcement officer stops a moving vehicle, and the officer has probable cause to believe that the vehicle is carrying contraband, the vehicle may be searched without a warrant either at the scene or later at the police station. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *United States v. Muhammed*, 658 F.2d 249 (4th Cir. 1981). Sufficient probable cause arises when the officer smells marijuana inside the vehicle. *United States v. Sifuentes*, 504 F.2d 845 (4th Cir. 1974). In addition, the officers may search any sealed container located inside the vehicle if the container's contents can be inferred from its outward appearance, distinctive configuration, transparency or other characteristics, thereby bringing the contents within plain view. *Robbins v. California*, 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981). Another characteristic which brings the contents into plain view is the odor given off by those contents. *United States v. Haynie*, 637 F.2d 227 (4th Cir. 1980); *Sifuentes*, 504 F.2d at 848.

---

**1.** The tow truck operator did not explicitly state whether Alford punched a hole in the bag or whether he simply widened a pre-existing hole. Because of the other circumstances surrounding the incident, we do not find it necessary to remand this factual question for resolution.

**2.** The record indicates that Alford did not receive a search warrant, but rather a copy of his own affidavit.

This case fits squarely within the foregoing criteria. The automobile was moving at a high rate of speed when stopped by Trooper Alford. The strong marijuana odor emanating from the vehicle and the small bag of marijuana found under the seat gave Alford probable cause to believe that still more marijuana was inside, thereby justifying a warrantless search either at the scene or at the police barracks. Further, the numerous garbage bags found during the search were packed with a coarse substance which was obviously marijuana. This distinctive configuration together with the intense marijuana odor brought the contraband into plain view and justified its seizure.[3]

We therefore conclude that the search of the defendants' vehicle and the containers located therein were legitimate warrantless searches.[4] Accordingly, the suppression order entered by the district court is reversed and this case is remanded for further proceedings.

REVERSED AND REMANDED.

WINTER, Chief Judge, dissenting:

Because I am persuaded that the majority misreads the record as to facts critical to a proper application of the law regarding warrantless searches, I respectfully dissent. I would affirm the suppression order entered by the district court.

The case involves Trooper Alford's search of a garbage bag which he found in the trunk of defendants' car. It is the majority's thesis that Trooper Alford had probable cause to search the trunk because he detected the odor of marijuana and that the intense odor, together with the distinctive configuration of the garbage bags, brought the contraband into plain view and justified its seizure.

I.

Nothing in the record supports the majority's implied factual premise that the trunk or the garbage bags gave off an odor of marijuana. Alford's testimony is that (1) he opened the trunk to take an inventory; (2) he saw marijuana through a hole in one of the garbage bags found in the trunk; and (3) he closed the trunk immediately after spotting the marijuana through the hole. Nowhere in the record does Alford suggest that he opened the trunk because it smelled of marijuana. Nowhere does he even hint that the bags themselves gave off the telltale odor.

This, of course, is not to suggest that the smell of marijuana played no role in the episode. Alford testified that he detected the odor on Haley's person while the two of them were sitting in the police cruiser. Alford stated that he again smelled marijuana —or, more precisely, marijuana smoke— when he opened the passenger door of the car and spoke with Riehl.

Concededly, on cross-examination Alford stated: "I knowed for a fact that there was a strong odor of marijuana coming from the vehicle." In context, it is clear that this remark refers to the impressions which Al-

---

3. We do not imply that *both* distinctive configuration and odor are necessary to justify the search of the containers. This Court has previously held that odor alone is sufficient cause to search such containers as cardboard boxes. *Sifuentes*, 504 F.2d at 848. In this case, the presence of both factors emphasizes the legitimacy of the search.

4. The defendants also argue that federal agent James could not lawfully participate in the station house search because the circumstances which confronted James when he first entered the case did not justify a warrantless search. According to the defendants, James was confronted by a car which was in police custody and thus he had no reason to proceed without a warrant. To the defendants, the events which occurred prior to James' appearance were irrelevant.

The error in the defendants' argument is that it fails to focus upon the nature of the search. Station house searches are recognized exceptions to the warrant requirement, and are justified by events which occur when the vehicle is initially stopped on the highway. These characteristics are not dependent upon the governmental affiliation of the officers involved. Thus, once the search becomes permissible, it makes no difference for Fourth Amendment purposes whether a particular officer joins in at the invited stop or during the interval between the stop and the conclusion of the search.

ford formed from his perusal of the passenger compartment and not to any odor coming from the trunk or the bags subsequently found there.[1]

Thus there is no factual basis for the majority's contention that any distinctive odor of marijuana emanated from the trunk of the car or the garbage bags contained therein. This brings me to the majority's assertion that the bags had a "distinctive configuration" which brought their illicit contents into "plain view."

Alford did not testify that any "distinctive configuration" of the garbage bags bespoke their contents. Any such conclusion is foreclosed, moreover, by *Robbins v. California*, 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981), which, so long as it remains the law, controls this case.[2] There a plurality of the Court held that "a container may not be opened without a warrant, even if it is found during the course of the lawful search of an automobile." 453 U.S. at 428, 101 S.Ct. at 2847. This rule excepts only containers the contents of which are effectively in plain view either because the container is open or "so clearly announce[s] its contents, whether by its distinctive configuration, its transparency, or otherwise, that its contents are obvious to an observer." 453 U.S. at 428, 101 S.Ct. at 2847. Justice Powell, the fifth vote nec-

essary to a judgment, concurred on the ground that "the manner in which the package at issue was carefully wrapped and sealed evidenced petitioner's expectation of privacy in its contents." 453 U.S. at 429, 101 S.Ct. at 2847. The Chief Justice concurred in the judgment invalidating the search without opinion.

Like the plastic packages in *Robbins*, the garbage bags here were closed, opaque, and packed in a locked trunk.[3] Even under Justice Powell's theory, therefore, the containers were protected from a warrantless search because their physical characteristics and location "evidenced [defendants'] expectation of privacy in [their] contents." *See also* 453 U.S. at 429, 101 S.Ct. at 2847 (plurality opinion). Furthermore, the plastic bags cannot be said to have made their "contents . . . obvious to an observer" by any "distinctive configuration." Garbage bags are commonly used to store and transport many things besides contraband, and the fact that several such containers were found in the trunk does not exclude myriad innocent uses. The inference that the garbage bags contained marijuana undoubtedly seemed compelling to Alford, who, (like the officer in *Robbins*) had just discovered marijuana in the front seat. The *Robbins* Court held, however, that such an inference

---

**1.** Alford made the statement on cross-examination by way of explaining why he wished to search the car after defendants produced a small bag of marijuana from under the front seat:

Q. It was the marijuana that you were worried about?
A. No sir. The fact that it appeared that they were hiding something in the vehicle.
Q. It was the fact that they wouldn't let you search their car; is that right?
A. Yes, sir.
Q. What did you suspect was in the vehicle?
A. I did not know what was in the vehicle at that point.
Q. But you knew something was?
A. Well, I knowed that for some reason they didn't want me to search the vehicle. *I knowed for a fact that there was a strong odor of marijuana coming from the vehicle.*
Q. *That was explained by the little bag of marijuana almost an ounce, twenty-three grams; isn't that right?*
A. *Yes, sir.*

Q. *That was the smoke that you smelled; was it?*
A. *Possibly.*
Q. But you had an instinctive feeling that there was something in that car; is that what you are saying?
A. Yes, sir.
Q. And that was because these boys didn't want you to search the car?
A. Yes, sir. (Emphasis added)

**2.** The Supreme Court has granted certiorari in a case largely indistinguishable from *Robbins* and has directed counsel to address the question of whether the Court should reconsider *Robbins. See United States v. Ross,* —— U.S. ——, 102 S.Ct. 386, 70 L.Ed.2d 205 (1981).

**3.** As noted above, Alford testified that one of the bags had a two-inch hole in it—a point I will address hereafter. For present purposes, it is sufficient to note that the majority's plain view theory disavows any reliance upon this questionable evidence.

is not reasonable within the meaning of the Fourth Amendment.

## II.

As I have shown, the record does not support an assertion that Alford detected the odor of marijuana emanating from the bags or the trunk, and there is no legal or factual basis for a claim that the bags revealed their contents by any distinctive configuration. I am brought, then, to a contention of the government noticed but not relied upon by the majority in upholding the validity of the search. It is the claim that Alford could see the contents of one bag because it had a hole in it.

Alford did testify that he saw marijuana through a hole in one of the bags, and he also testified that he neither created the hole in the bag, nor widened it. However, Laner, the tow truck operator, testified that Alford "reached his hand in and tore one of the big bags open. . . . [H]e stuck his fingers in the bag and ripped the bag open." The district court discredited Alford's testimony "where it was contradicted by Mr. Laner as to the ripping open of the garbage bag containing marijuana in the trunk of the car." This credibility determination is one that we cannot disturb.

In its statement of facts, the majority suggests that Laner's testimony and Alford's testimony are not necessarily inconsistent: "The truck operator did not explicitly state whether Alford punched a hole in the bag or whether he simply widened a pre-existing hole." Concededly, Laner was never specifically asked whether there was a hole in the bag before Alford ripped it open. As I read the transcript, however, Laner clearly implied that any hole was of Alford's making. The district court, moreover, found that Alford testified falsely

when he denied ripping the bag. Any ambiguity in the conflict between Laner's and Alford's testimony must therefore be resolved against Alford.

Alford engaged in a warrantless search when he ripped the garbage bag open. Because there is no basis in fact or law for applying the plain view exception to the warrant requirement, I would affirm the district court's order suppressing the use of evidence illegally obtained.[4]

---

**4.** In response to defendants' first suppression motion, the district court upheld the validity of the search under the Fourth Amendment. In my view, that ruling was erroneous. The trial judge later vacated that ruling and suppressed the evidence because a subsequent stationhouse search was conducted under a state warrant that failed to meet the requirements of Federal Rule of Criminal Procedure 41(a). This position is somewhat problematical, because, if the roadside search was valid, it is unclear why a warrant was required for the ensuing search at the stationhouse. Since I conclude that Alford's initial search of the garbage bag was unlawful under the Fourth Amendment, however, I would suppress as tainted fruit the evidence seized at the stationhouse. Like the majority, I find it unnecessary to address the rule 41(a) issue.