**UNITED STATES of America**

v.

**Paula GRAYSON, Defendant.**

**Crim. No. 87–396–2.**

United States District Court, District of Columbia.

May 27, 1988.

Bradley Simon, Office of the U.S. Atty., Washington, D.C., for Government Counsel.

Sol Rosen, Washington, D.C., for defendant.

MEMORANDUM

FLANNERY, District Judge.

Defendant Paula Grayson has filed a Motion for a New Trial or Judgment of Acquittal, following her conviction by jury on one count (Count III) of unlawfully possessing phencyclidine (PCP) with intent to distribute. 21 U.S.C. §§ 841(a) & (b)(1)(B)(iv). Grayson was acquitted on all other counts in the indictment, but the jury convicted her codefendant, Darrell Wilson, on four of the five counts in their indictment under federal narcotics laws.

As the basis for her motion, Grayson asserts that there was insufficient evidence for the jury to convict on a theory of constructive possession, and that the Court erred by denying a defense request to introduce a search warrant and accompanying affidavit into evidence. Finding merit in the first contention, the court pretermits the second and grants the motion for a judgment of acquittal. After reviewing the evidence presented at trial and the facts stipulated at a post-trial hearing on this motion, the court concludes there was insufficient evidence for the jury to conclude, beyond a reasonable doubt, that Grayson possessed the particular items of contraband referred to in Count III.

I.

Grayson was arrested on August 24, 1985, as narcotics officers of the Metropolitan Police Department (MPD) executed a warrant to search a one-bedroom dwelling at 1241 16th Street, N.E. The warrant was supported by an affidavit reciting a reliable informant's report that a black male was

selling PCP at that address, and that the informant had made a purchase of drugs there using MPD funds. After knocking at the front door and announcing their purpose, the officers entered the apartment just as Wilson was heading for the rear of the house. The officers overtook Wilson as he reached the rear bedroom, and there they found Grayson and a young child. There was trial testimony that Grayson, when she first encountered the officers, exclaimed that "you cannot search my house without a warrant."

Wilson and Grayson were detained during the search, and when the search uncovered large quantities of PCP and other drugs, Wilson and Grayson were arrested. Each count in the ensuing indictment relates to narcotics found in discrete areas of the house.[1] Counts I & II refer to containers of PCP found in a locked trunk in the kitchen; Counts IV and V refer to drugs that were concealed in the bedroom. Count III, the only count on which the jury convicted Grayson, refers to two containers of PCP found in a bathroom across the hall from the bedroom where Grayson was found.

The first of these containers, an unwrapped almond extract bottle containing an ounce of PCP, was found just next to the toilet; the second, a sixteen ounce Burke's Root Beer bottle wrapped in plastic and placed inside a paper shopping bag, contained approximately two ounces of PCP and was found beside the bathtub. According to one officer's trial testimony, the bottles bore the distinctive odor that experienced narcotics officers associate with PCP.

In addition to the contraband and other evidence, the following items were noted or recovered at the house and presented at trial: a set of keys, later identified as belonging to Grayson, which included a key to the front door of the house; some mail addressed to Grayson, but directed to an address other than that where the drugs were found; and photographs of Grayson and Wilson taken at the house. All other indicia of occupancy—leases, mail etc.—

connected Wilson, but not Grayson, to the premises. The government introduced no further evidence to link Grayson with the PCP or anything else police found at the house.

### II.

When defendants claim that evidence on one or more elements of an offense was insufficient to support a jury verdict, the court must evaluate the evidence in the light most favorable to the government, *United States v. James*, 764 F.2d 885, 889 (D.C.Cir.1985), adopting any permissible inferences that the jury might have drawn in support of the prosecution. "When a reasonable mind might fairly have a reasonable doubt of guilt or might fairly have none, the decision is for the jurors to make." *United States v. Herron*, 567 F.2d 510, 514 (D.C.Cir.1977).

Grayson contends that this standard precludes her conviction for possession of the PCP in the bathroom. A jury certainly could not have concluded that Grayson had actual possession of the narcotics referred to in Count III, but the jury may convict if there is either constructive or actual possession, and the government may meet its burden of proving this element either by direct or by circumstantial evidence. *United States v. Lawson*, 682 F.2d 1012, 1017–18 (D.C.Cir.1982); *United States v. Raper*, 676 F.2d 841, 847 (D.C.Cir.1982).

The government in this case proceeded on a theory of constructive possession based entirely on circumstantial evidence, evidence that Grayson contends cannot support a jury conclusion that she "was in a position or had the right to exercise dominion or control" over the contraband, or that "such 'dominion and control' [was] knowing." *See United States v. Hernandez*, 780 F.2d 113, 116 (D.C.Cir.1986). She supports this argument by reference to "principle of law firmly rooted in this circuit [ ] that *mere presence at the scene of a drug transaction or mere proximity to drugs seized is not sufficient to establish guilt.*" *United States v. Pardo*, 636 F.2d

---

**1.** Wilson and Grayson were named together in the same indictment.

535, 549 (D.C.Cir.1980) (emphasis in original). This principle was reaffirmed this term in *United States v. Dunn,* 846 F.2d 761 (D.C.Cir.1988).

This court recently has surveyed constructive possession cases, identifying the types of circumstantial evidence that, in conjunction with presence or proximity, are adequate to support the requisite jury conclusion "that in some discernible fashion the accused had a substantial voice vis-a-vis the drug." *United States v. Staten,* 581 F.2d 878, 884 (D.C.Cir.1978). In *United States v. Green,* 652 F.Supp. 1312 (D.D.C. 1987), the court noted that verdicts based on constructive possession generally have been upheld when "the government introduced evidence of illegal narcotics or drug paraphernalia *in plain view* of both police and the occupants of the premises searched," or when there was "evidence that defendants acted in a manner consistent with knowledge or guilt." 652 F.Supp. at 1314–15 (citing cases), *following United States v. Foster,* 783 F.2d 1087, 1090–91 (D.C.Cir.1986).

According to the government, the jury's verdict is permissible because the PCP was in "plain view" in the bathroom. It is undisputed that one bottle was wrapped inside two different bags, so this argument can only be thought to refer to the almond extract bottle beside the toilet in the bathroom. The difficulty with this argument is that there was nothing about this particular bottle that made its association with PCP, or with any sort of criminal behavior, apparent. This is decidedly unlike those cases in which narcotics in open view could be discerned as such, or in which packaging materials, firearms, or other paraphernalia of the narcotics trade would lead a reasonable individual on the premises to know that something was afoot. Standing alone, the presence of a small and inconspicuous bottle that presents no clue as to its contents and does not bear the defendant's fingerprints, will not support an inference that the defendant had knowledge of, and dominion over, those contents.

This conclusion is unaffected by the government's contention that the bottles gave off an aroma characteristic of PCP. First, the court notes that there was no basis on which the jury could conclude that the smell would be obvious to anyone present. More importantly, there was no testimony at all that the defendant, or any reasonable person in the defendant's position, would associate the smell with PCP, even if the smell pervaded the apartment. However "plain" this identification might be to a trained narcotics officer, there was no evidentiary basis for the jury to conclude that the smell would have any meaning to the uninitiated, or to this particular defendant.

Finally, the government argues that the jury verdict is adequately supported by the evidence, such as the pictures and the keys, which suggest the defendant regularly lived at the premises searched. The court recognizes that such evidence could have supported a jury inference of joint occupancy of the premises by Grayson and Wilson, particularly if the court accepts (as it must) the testimony that Grayson referred to the residence as "my house." But joint occupancy cannot support an inference of possession by itself. Even where joint occupancy is conceded, further evidence of dominion or control—even if circumstantial—must be adduced before a jury can conclude that a defendant knowingly possessed contraband. The cases reveal that constructive possession may only be inferred when control over the premises is accompanied by one of the two sorts of circumstantial evidence that we have identified. *See Herron,* 567 F.2d at 513; *United States v. Davis,* 562 F.2d 681, 684 (D.C.Cir. 1977).

The only evidence that could conceivably fit into the other category of circumstantial evidence the court has identified—evidence of conduct consistent with knowledge or guilt—would be the defendant's exclamation that "you cannot search my house without a warrant." There was no evidence that she had attempted to hide or destroy evidence, however, or that she interfered with the search once the warrant was presented. In such circumstances the court cannot equate the assertion of a legal right of this sort with evidence of guilt. The

innocent as well as the guilty may insist that the police act lawfully.

### Conclusion

For the reasons set forth above, the court grants the defendant's Motion for a Judgment of Acquittal because the jury could not reasonably have concluded, under the totality of the circumstances, that Grayson knowingly possessed the PCP referred to in Count III.