**UNITED STATES of America**

v.

**Isam FATTALEH.**

**Crim. No. HM–88–0311.**

United States District Court,
D. Maryland.

Sept. 7, 1990.

Hollis Raphael Weisman, Asst. U.S. Atty., Baltimore, Md., for plaintiff.

Warren Brown, Baltimore, Md., for defendant.

## MEMORANDUM

HERBERT F. MURRAY, Senior District Judge.

Presently pending before the Court in the above-captioned case is the appeal of defendant, Isam Fattaleh, from the judgment and conviction for possession of phencyclidine[1] entered by United States Magistrate James I. Kenkel.

### BACKGROUND

On December 16, 1987, the United States Park Police arrested Mr. Fattaleh and charged him with possession of phencyclidine (hereinafter "PCP"). The following is the government's version of the events surrounding this arrest, as presented at trial, primarily through the testimony of the arresting officer, Russell Eisenberg. The Court has set forth the government's version because, as discussed below, in reviewing a Magistrate's conviction on appeal, the Court must view all of the evidence in the light most favorable to the government.

At approximately 4:18 a.m. on December 17, 1987, United States Park Police Officer Russell Eisenberg pulled the defendant over for traveling at a speed of 77 miles per hour in a 55 mile per hour zone. The defendant was driving the car and his sister, Brenda Fattaleh, was sitting in the front passenger seat. The officer asked the defendant for his drivers license, and the defendant responded that he had left it at home.

As the officer spoke with defendant through the open window, he noticed an "acrid" odor coming from the vehicle. (Tr. 10). Based on his involvement in over 75 arrests involving PCP, the officer recognized this odor as the type which emanates from this drug. (Tr. 3). The officer ordered both passengers out of the car so that he could search the car to find the

origin of the odor. Officer Eisenberg noticed a pack of cigarettes lying on the front floorboard, on the driver's side of the car, between Mr. Fattaleh's feet. (Tr. 16). The officer picked up the cigarettes and the odor of PCP intensified. Upon opening the pack, he found two "dippers" (tobacco cigarettes that had been dipped in liquid PCP) which were still damp. (Tr. 5).[2] For reasons to be discussed below, it should be noted that, as reflected in the transcript, the defendant has a prior conviction for possession of PCP. (Tr. 23).

Officer Eisenberg offered the defendant a field sobriety test but dispensed with it because the defendant was very uncooperative. Both Isam Fattaleh and Brenda Fattaleh were arrested and, later that night, the police found a bottle of liquid PCP concealed in Brenda Fattaleh's brassiere. (Tr. 18). The car defendant was driving at the time he was pulled over by Officer Eisenberg belonged to another sister, Mae Fattaleh, and he had borrowed it for the day.

On March 8, 1988, the defendant consented to trial before Magistrate Kenkel. He had filed a motion to suppress all evidence, and the hearing on the motion was held as part of the non-jury trial. After the conclusion of the evidence, the Magistrate denied the motion to suppress and found the defendant guilty of possession of PCP and speeding. The Magistrate sentenced the defendant to a one year term of imprisonment, and a $25 dollar special assessment on the drug charge. This appeal was then taken.

### DISCUSSION

The defendant raises two issues on appeal: (1) whether the trial court's denial of defendant's motion to suppress based on his finding of probable cause was correct; and (2) whether the evidence adduced at trial was sufficient to support the defendant's conviction for possession of PCP. Before this Court addresses the substan-

---

1. Defendant was also found guilty of speeding, but he does not appeal this conviction.

2. The defendant testified that he did not know that those cigarettes were in his car, that they

were not his cigarettes, and that he never saw them prior to when the officer took them from the car. (Tr. 22). The defendant also testified that he could not smell the PCP because he can not smell anything. (Tr. 23).

tive merits of these issues, we must establish the appropriate standard of review.

■ A district court reviewing a decision of a Magistrate should apply the same standard of review that the court of appeals uses when reviewing a decision of the district court. As the Court in *United States v. Laughman*, 618 F.2d 1067, 1075 (4th Cir.1980) stated: "[T]he evidence and all reasonable inferences arising from it must be viewed in the light most favorable to the government...." (*quoting Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1941)); *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 ("[t]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt").

■ In *United States v. Klose*, 552 F.Supp. 982, 984 (E.D.Pa.1982), the Court further explained that: "The appropriate standard is whether a rational trier of fact could conclude beyond a reasonable doubt that the defendants were guilty." Accordingly, this Court should not reverse the decision of the Magistrate unless, after considering all of the evidence in the most favorable light to the government's case, this court finds that the Magistrate (or any rational trier of fact) could not conclude beyond a reasonable doubt that the defendant was guilty.

■ The first issue presented to this Court is whether the Magistrate properly concluded that "probable cause" existed to justify the warrantless search of defendant's car, and the pack of cigarettes which was found in the car. Pertinent case law clearly demonstrates that defendant's contention that the search was unlawful is without merit.

"When a law enforcement officer stops a moving vehicle, and the officer has probable cause to believe that the vehicle is carrying contraband, the vehicle may be searched without a warrant either at the scene or later at the police station." *United States v. Haley*, 669 F.2d 201, 203 (4th Cir.1982), (*citing Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970)); *See Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). In this case, officer Eisenberg originally pulled over defendant's car to make a routine traffic stop for speeding. Defendant does not contend that this original stop was wrongful. Thus, as stated above, the inquiry which the Court must next address is whether, having made the lawful stop, the officer had probable cause to search the car and the cigarette pack. The *Haley* case is also instructive on this point.

The *Haley* Court held that: "Sufficient probable cause arises [to search a vehicle] when the officer smells marijuana inside the vehicle." 669 F.2d at 203 (*citing United States v. Sifuentes*, 504 F.2d 845 (4th Cir.1974)). Analogously, officer Eisenberg smelled the odor of PCP emanating from Mr. Fattaleh's car and, therefore, had probable cause to search the vehicle. Having established that there was probable cause to search a vehicle, the Supreme Court has clearly held that an officer has the right to search packages or containers found within the vehicle. Thus, in *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) the Court stated:

> When a legitimate search is underway, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand. This rule applies equally to all containers, as indeed it must.

*Id.* at 821–22, 102 S.Ct. at 2171. Applying the above principles to a warrantless search based on probable cause, the Court further stated that:

> [A]n individual's expectation of privacy in a vehicle and its contents may not survive if probable cause is given to believe that the vehicle is transporting contraband. These interests must yield to the authority of a search, however,

which—in light of *Carroll*—does not itself require the prior approval of a magistrate.

*Id.* at 823, 102 S.Ct. at 2172. Combining the above propositions, the Court concluded that:

> We hold that the scope of the warrantless search authorized by the exception is no broader and no narrower than a magistrate could legitimately authorize by warrant. If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.

*Id.* at 825, 102 S.Ct. at 2173.

The holdings of *Haley* and *Ross* are dispositive of the probable cause-legality of search issue in the case at bar. The uncontradicted testimony of officer Eisenberg is that he smelled the odor of PCP emanating from the car. (Tr. 3). At that point, in accordance with the holdings in *Haley* and *Chambers*, the officer had probable cause to search the car. Furthermore, as *Ross* reveals, once the smell of PCP established the probable cause to search the car, it equally justified the officer's search of any containers found in the car, or more specifically, the cigarette pack found on the front floorboard of the car. Therefore, this Court finds that the Magistrate properly denied the defendant's motion to suppress on the ground that probable cause existed for the search of the car and the pack of cigarettes.

■■■ The second issue presented to this Court is whether the evidence was sufficient to support the defendant's conviction for possession of PCP. In arguing that the evidence was insufficient, the defendant relies primarily on a 1957 Fifth Circuit case, *Guevara v. United States*, 242 F.2d 745. In *Guevara*, the defendant was driving the car and was accompanied by one passenger, sitting in the front seat. The police pulled over the car and found a pack of marihuana cigarettes under the front seat of the car "about halfway between the driver's seat and the passenger's seat." *Id.* at 746 The *Guevara* court reversed the trial court's judgment of conviction, stating that:

> The cigarettes were in such position that they could easily have been placed in the unlocked vehicle by any person. Under the circumstances here proved, there is no rational connection between ownership and possession of the automobile and possession of the cigarettes. For all that the present evidence shows, it is just as reasonable to believe that the cigarettes belonged to the passenger as the appellant.

*Id.* at 747. Defendant apparently claims that the fact that the PCP cigarettes were found beneath the defendant's feet could not sufficiently support the defendant's conviction for possession, because, as in *Guevara*, a passerby or the passenger could have placed them there. Therefore, defendant concludes, the reasoning in *Guevara* requires this Court to reverse defendant's conviction.

In response, the government points out that Mr. Fattaleh was the driver of the car, and had driven the car exclusively since borrowing it from his sister Mae in the morning. Therefore, the government contends that Mr. Fattaleh possessed the cigarettes beneath his feet because possession exists "when [a] defendant exercises, or has the power to exercise, dominion and control over the item." *United States v. Watkins*, 662 F.2d 1090, 1097 (4th Cir. 1981). The Court finds that the case law clearly supports the government's contentions and that defendant's reliance on *Guevara* is misplaced.[3]

The offense of possession requires the government to prove beyond a reasonable doubt that the defendant (1) knowingly (2) possessed a controlled substance. 21 U.S.C. § 844(a). This Court will address

---

**3.** The Court notes that even if the Fourth Circuit had adopted the *Guevara* reasoning, (which it has not), the facts of the instant case are distinguishable from those in *Guevara*. For example, in the case at bar the cigarette pack was in plain view, not under the seat and, perhaps most importantly, the cigarette pack was on the drivers side, underneath defendant's feet, not "halfway" between the driver and the passenger.

the possession requirement first. "Actual possession of the drug is not required; constructive possession which occurs when the defendant 'exercises or has the power to exercise dominion and control over the item' suffices." *United States v. Samad*, 754 F.2d 1091, 1096 (4th Cir.1984). In cases involving either actual or constructive possession, the Fourth Circuit has never relied on *Guevara* and, in fact, has implicitly overruled *Guevara.*

In *United States v. Crockett*, 813 F.2d 1310 (4th Cir.1987), the defendant drove a car that contained PCP in a gym bag resting on the front passenger's lap. In finding that the evidence was sufficient to support defendant's conviction for, *inter alia,* possession, the Fourth Circuit quoted, with approval, the proposition that: "one who owns or exercises dominion or control over a motor vehicle in which contraband substance is concealed may be deemed to possess the contraband." (*quoting United States v. Vergara*, 687 F.2d 57, 62 (5th Cir.1982)).

Another illustrative case is *United States v. Riggins*, 563 F.2d 1264 (5th Cir. 1977). In *Riggins*, the defendant was the authorized driver of a car his wife had rented. Drug Enforcement Agents found heroine in a grocery bag on the floorboard of the passenger side of the car. The Court stated that "control or domination over the vehicle in which the contraband is concealed does support a finding of possession." *Id.* at 1266. The Court concluded that, as the authorized driver of the car, "Riggins [the defendant] exercised control

over the use of the car," and therefore, possessed the drugs found within the car. *Id.* (The court had previously found that defendant had the requisite knowledge). Similarly, in the case at bar, the defendant had borrowed the car from his sister for the day and drove the car exclusively on that day. This evidence was sufficient to establish that Mr. Fattaleh "exercised control over the use of the car" and, accordingly, possessed the PCP cigarettes found between his feet in the car.

The government, of course, must also prove that the defendant *knowingly* possessed the controlled substance. Thus, proof of dominion or control without the requisite showing of knowledge, is insufficient to sustain a conviction under 21 U.S.C. § 844(a). The government may prove the defendant's *knowing* possession by inference or by direct proof. *See United States v. Samad*, 754 F.2d 1091. In *United States v. Hooks*, 780 F.2d 1526 (10th Cir.1986), the court held that a defendant's apparent willingness to endure the smell of PCP in a vehicle gives rise to an inference of knowledge of possession, *if* the government establishes the defendant's familiarity with the smell of PCP. *See also United States v. Grayson*, 685 F.Supp. 279 (D.D.C.1988).[4] In the case *sub judice*, the Magistrate knew that defendant had a prior conviction for possession of PCP and, thus, could have reasonably inferred that the defendant was familiar with the smell of PCP.[5] (Tr. 23).

The defendant contends that, although he sat amidst the pervading odor of PCP in

4. The court held that the government could not use the pervading odor of PCP to show the defendant's knowledge, unless there was evidence that the defendant would associate the smell with PCP.

5. Rule 404(b) of the Federal Rules of Evidence (1989) states:
Evidence of other crimes, wrongs, or acts, is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, *knowledge*, identity, or absence of mistake, or accident.

(emphasis added). In *United States v. Flores Perez*, 849 F.2d 1, 7 (1st Cir.1988), the court stated: "Second, even if a defendant is caught in possession of illegal drugs, but disavows any knowledge of that fact, prior experience with drugs can be introduced to show that the defendant knows how drugs look, feel, *smell*, and weigh." (emphasis added). Accordingly, an inference of the defendant's knowledge of the smell of pcp can appropriately arise from the fact that the defendant had a prior conviction for possession. Although the government may not have introduced the prior conviction for this specific purpose, the Magistrate could have made a reasonable inference from this fact.

**604**

the car, he could not smell it.[6]  He testified that: "Uh, I can't even smell, can't smell nothing if you cooking something I couldn't smell it." (Tr. 23).  The defendant seems to assert that he suffers from some type of medical disorder of the olfactory sense which disabled him from smelling the PCP.

The simple answer to this contention is that the trier of fact (the Magistrate) heard this testimony and was free to judge the witness' credibility.  Obviously, the Magistrate chose not to believe the defendant, and concluded that he could smell the PCP and was familiar with its smell.  Furthermore, the defendant can not expect this Court to accept such an assertion, *vel non*, as proof that the defendant could not, in fact, smell.  The defendant could have introduced other evidence supporting his contention that he suffered from a medical impairment (if, in fact, such was the intended meaning of the phrase "I can't even smell, can't smell nothing if you cooking something I couldn't smell it." (Tr. 23))[7] This Court concludes that the Magistrate could have reasonably inferred from the evidence of defendant's prior conviction for possession of PCP that the defendant was familiar with the smell of PCP and, when taken in conjunction with the testimony regarding the pervasive smell of PCP, that he *knowingly* possessed the PCP found beneath his feet.

Taking all of the evidence in the light most favorable to the government's case, this Court finds that the evidence was sufficient to support the Magistrate's finding that the defendant knowingly possessed the PCP cigarettes found beneath his feet. Accordingly, the Court will enter a separate Order affirming the defendant's conviction for possession of PCP.

---

6.  It should be noted that defendant never testified, nor does he now contend, that he could not recognize the smell of PCP.

7.  This Court would open up a pandora's box by accepting a defendant's testimony of his physical impairments as factually correct.  A defendant caught with drugs in plain view could successfully defend against any charges by stating that he suffered temporary blindness and never saw the drugs.  The Court cannot entertain such frivolous assertions.